THE STATE, EX REL. OHIO COUNCIL 8, AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, AFL-CIO, ET AL., APPELLANTS, *v.* SPELLACY, CHIEF JUSTICE, ET AL., APPELLEES.

[Cite as State, ex rel. Ohio Council 8, *v.* Spellacy (1985), 17 Ohio St. 3d 112.]

(No. 84-1442—Decided May 22, 1985.)

*Berkman, Gordon, Murray & Palda, Bernard A. Berkman, George W. Palda* and *Lorraine R. Baumgardner,* for appellants.

*John T. Corrigan,* prosecuting attorney, and *Thomas P. Gill,* for appellees.

WRIGHT, J.  It is well-settled that in order for a writ of mandamus to issue the relator must demonstrate "(1) that he has a clear legal right to the relief prayed for, (2) that respondents are under a clear legal duty to perform the acts, and (3) that relator has no plain and adequate remedy in the ordinary course of the law." *State, ex rel. Berger,* v. *McMonagle* (1983), 6 Ohio St. 3d 28, 29, citing *State, ex rel. Harris,* v. *Rhodes* (1978), 54 Ohio St. 2d 41, 42 [8 O.O. 3d 36]; *State, ex rel. Heller,* v. *Miller* (1980), 61 Ohio St. 2d 6 [15 O.O. 3d 3], paragraph one of the syllabus; *State, ex rel. Westchester,* v. *Bacon* (1980), 61 Ohio St. 2d 42 [15 O.O. 3d 53], paragraph one of the syllabus. Relators have failed to satisfy any of the stated requirements necessary for the issuance of this high peremptory writ.

Initially, relators have not proven that they have a clear legal right to the relief prayed for. Relators claim they are legally entitled to require respondents to sign and honor a new statement of policy. In effect, relators are seeking to implement and enforce the functional equivalent of a collective bargaining agreement. The facts presented, however, do not clearly establish relators' contention that any new agreement was entered into prior to respondents' notice of termination. Simply stated, relators have failed to conclusively prove the existence of a legally enforceable contract or collective bargaining agreement.

Secondly, and more importantly, relators have not demonstrated that respondents were under a clear legal duty to enter into a collective bargaining agreement. During the course of negotiations commencing November 22, 1982, the respondents lacked the authority to collectively bargain with court employees. *Malone* v. *Court of Common Pleas* (1976), 45 Ohio St. 2d 245 [74 O.O.2d 413]. Cf. *F.O.P.* v. *Dayton* (1978), 60 Ohio App. 2d 259 [14 O.O.3d 238]; *American Federation of Employees* v. *Polta* (1977), 59 Ohio App. 2d 283 [13 O.O.3d 284]. All statements of policy entered into prior to this time were merely statements of understanding between the relators and the respondents.

In the period between the expiration of the statement of policy ending on January 31, 1983, and the breakdown in negotiations on February 28, 1984, the Ohio General Assembly enacted the Public Employees Collective Bargaining Act which extended collective bargaining rights to public employees. Officers and employees of the courts were specifically excluded from the purview of this legislation, however,[1] unless the court, as

---

[1] R.C. 4117.01(C)(8) provides:

" 'Public employee' means any person holding a position by appointment or employment in the service of a public employer, including any person working pursuant to a contract between a public employer and a private employer and over whom the national labor relations board has declined jurisdiction on the basis that the involved employees are employees of a public employer, except:

"* * *

"(8) Employees and officers of the courts, assistants to the attorney general, assistant prosecuting attorneys, and employees of the clerks of courts who perform a judicial function;

"* * *"

employer, expressly elected to engage in collective bargaining.[2] R.C. 4117.01(C)(8) and 4117.03(C). Thus, the decision to recognize collective bargaining is strictly a matter of judicial discretion. R.C. 2731.03 states that:

"The writ of mandamus may require an inferior tribunal to exercise its judgment, or proceed to the discharge of any of its functions, *but it cannot control judicial discretion.*" (Emphasis added.)

In sum, prior to the enactment of the Public Employees Collective Bargaining Act, R.C. 4117.01 *et seq.,* respondents, as officers of a court of common pleas, had no authority to enter into collective bargaining agreements with employees of the court. Subsequent to the enactment of the collective bargaining Act, the determination to recognize collective bargaining within the courts became a matter of judicial discretion. As such, there is no absolute legal duty which would warrant granting the extraordinary remedy of mandamus in the present case.

Finally, relators have failed to prove that they have no plain and adequate remedy in the ordinary course of the law. This case involves essentially whether a contractual obligation exists between the relators and the respondents. The proper vehicle for resolving this issue is through the filing of a declaratory judgment action in the court of common pleas. Cf. *State, ex rel. Square,* v. *Planning Comm.* (1980), 64 Ohio St. 2d 128 [18 O.O.3d 362]; *State, ex rel. McGarvey,* v. *Zeigler* (1980), 62 Ohio St. 2d 320 [16 O.O.3d 363]; *State, ex rel. Buian,* v. *Kadlec* (1978), 56 Ohio St. 2d 116 [10 O.O.3d 307].

Relators claim that a declaratory judgment action would be inappropriate because it must be filed with the Court of Common Pleas of Cuyahoga County and because it would involve a matter between that court and its employees. We nevertheless believe that a declaratory judgment proceeding would provide a plain and adequate remedy. The Chief Justice of this court, pursuant to the Rules of Superintendence for Courts of Common Pleas and upon request of the administrative judge of the common pleas court, may assign a visiting judge to hear the declaratory judgment action.

For all of the foregoing reasons, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

CELEBREZZE, C.J., LOCHER, HOLMES and C. BROWN, JJ., concur.

CELEBREZZE, C.J., and C. BROWN, J., concur separately.

SWEENEY and DOUGLAS, JJ., dissent.

---

[2] R.C. 4117.03(C) states:

"Nothing in Chapter 4117. of the Revised Code prohibits public employers from electing to engage in collective bargaining, meet and confer, discussions, or any other form of collective negotiations with public employees who are not subject to Chapter 4117. of the Revised Code pursuant to division (C) of section 4117.01 of the Revised Code."

CLIFFORD F. BROWN, J., concurring. I concur in the syllabus and judgment based upon the proposition, and rationale in support thereof, articulated in the opinion that respondents lacked the authority to bargain collectively with court employees. *Malone* v. *Court of Common Pleas* (1976), 45 Ohio St. 2d 245 [74 O.O.2d 413]. The relators, probation officers and clerk typists in the probation department of the court, were court employees who are in a position of public officers or employees to which the principle stated in *Fuldauer* v. *Cleveland* (1972), 32 Ohio St. 2d 114 [61 O.O.2d 374], paragraph three of the syllabus, applies:

"A public officer or employee holds his office as a matter of law and not of contract, nor has such officer or employee a vested interest or private right of property in his office or employment. (Paragraph one of the syllabus in *State, ex rel. Gordon,* v. *Barthalow,* 150 Ohio St. 499 [38 O.O. 340], approved and followed.)" See *Malone, supra,* at 248.

The court employees in *Malone, supra,* served at the pleasure of the juvenile judge who appointed them pursuant to R.C. 2151.13. *Id.* In the case here the probation employees of the general division of the common pleas court are appointed by the court under the authority of R.C. 2301.27, which, in pertinent part, provides:

"* * * The court shall make such appointments, fix the salaries of appointees, and supervise the work of appointees. * * * All positions within such department of probation shall be in the classified service of the civil service of the county."

Whether the court employees served at the will or pleasure of the judge by authority of R.C. 2151.13 without any civil service protection, as in *Malone, supra,* or, as in the present case, served by appointment of the court subject to the classified service of the civil service in the county pursuant to R.C. 2301.27, makes no difference. The holdings in *Malone, supra,* and *Fuldauer, supra,* apply to both situations. Neither statute in either situation authorizes the court to enter into a collective bargaining agreement with employees of the court. By reason thereof the relators have no right to mandamus relief no matter what mandamus principles of law are considered. That is also why the holdings in *Dayton Classroom Teachers Assn.* v. *Dayton Bd. of Edn.* (1975), 41 Ohio St. 2d 127 [70 O.O.2d 223], and *Civil Service Personnel Assn.* v. *Akron* (1976), 48 Ohio St. 2d 25 [2 O.O.3d 98], which recognized the right of public employees to bargain collectively, are not applicable here.

Our decision today affirming the court of appeals can rest on the foregoing analysis and does not require us to conclude that relators have no right to mandamus relief because they have a plain and adequate remedy in the ordinary course of the law by way of a declaratory judgment action in the common pleas court. I disavow any assertion that a declaratory judgment action is the appropriate proceedings in this case. Nevertheless, relators for other reasons herein discussed, have no right to

·a writ of mandamus. This harmonizes with my dissent in _Eudela_ v. _Rogers_ (1984), 9 Ohio St. 3d 159, at 162-164.

CELEBREZZE, C.J., concurs in the foregoing concurring opinion.

DOUGLAS, J., dissenting. In my judgment the issue before this court is whether courts, like other contracting parties, must honor and live by a collective bargaining agreement entered into with court employees. In presenting the issue there are certain obvious conditions precedent that must be satisfied before it can be determined if there was a valid agreement existing. In addition, we have, in this case, a serious procedural question that the majority conveniently ignores by perfunctorily reciting the tests for the granting of a writ of mandamus. Finally, we find the majority discussing, in order to bootstrap its argument, the recently enacted public employees bargaining law, R.C. Chapter 4117, when this new law has no relevancy at all to this case.

Was there an agreement between these parties? The facts are these. The parties have been entering into collective bargaining agreements (called "Statements of Policy") since the early 1960s. On February 1, 1980, the parties concluded an agreement that became effective February 1, 1980 and was to expire on January 31, 1983. On November 22, _1982,_ appellants notified Court Administrator John J. Curran of their desire to begin negotiating a new collective bargaining agreement. Shortly thereafter, the parties entered into negotiations. On January 27, 1983, they mutually agreed to extend the 1980-1983 agreement to March 1, 1983, while negotiations continued concerning a new agreement. On March 1, 1983, the parties still had not reached an accord and again, by mutual agreement, the parties entered into a day-to-day extension of the 1980-1983 statement of policy.[3]

Appellants contend that on March 29, _1983,_ the parties reached agree-

---

[3] The majority opinion regularly reflects that the judges of the court of common pleas were one of the contracting parties. The fact is, and a perusal of the record reveals, that section 104 of the agreement, styled as "Duration," contains, in pertinent part, the following language: "This Statement shall become effective when adopted _by the Court_ and by resolution of the appropriate membership of the Union * * *." (Emphasis added.) Section 1 of the agreement is styled "Statement of Policy" and states, in pertinent part, "[t]his Statement of Policy is between the _Court Administrator_ of the General Division of the Cuyahoga County Common Pleas Court, hereinafter referred to as the _'Court'_ * * *." (Emphasis added.) Thus it is clear that the authorized person to negotiate, approve, ratify and bind appellees was the court administrator. This is further confirmed by the affidavit of Court Administrator Curran, who said, in pertinent part, at number 3 of his affidavit that "[a]ffiant states that on or about March 1, 1983 the _Court Administrator_ and Relators' [appellants'] representative _mutually agreed_ to extend the terms of the 1980-1983 Statement of Policy on a day-to-day basis * * *." (Emphasis added.) Clearly, there was no question in the administrator's mind that he was the contracting party and had the authority to enter into a continuing contract on behalf of the "Court."

ment on a new collective bargaining contract for 1983-1986. The agreement was to be effective February 1, 1983 and terminate January 31, 1986. Appellants say the parties "shook hands on it" and on March 31, 1983 the membership ratified the agreement. Further, appellants, at the request of administrator Curran, were to provide Curran with a list of the agreed-upon changes so the new agreement could be reduced to a single document. Appellants contend that notwithstanding the fact that the new agreement had not been reduced to a single document, the parties lived by the agreement from March 31, 1983 to March 2, 1984 and that appellees, as well as appellants, adhered faithfully to the terms and conditions of the new 1983-1986 contract.

In support of their contentions, appellants point to the facts that every grievance processed after March 31, 1983, where applicable, was processed in accordance with the new agreement and that two increases in pay were granted by appellees in accordance with a *new* provision agreed upon by the parties in the contract for 1983-1986. In spite of all of this, say appellants, the appellee administrator neglected to tender a signed copy of the new agreement to appellants even though he had been requested to do so on a number of occasions.

All of the foregoing is supported in the record by the affidavit of Patricia A. Moss, a representative of appellants. The assertion by appellants of the existence of a new agreement is refuted, in the record, by the affidavit of administrator Curran. Thus we have a clear question of disputed fact.

Of course, none of this makes any difference if, as the majority contends, the "court," judges, or administrator had no authority under the law to contract with court employees. To support its position the majority relies heavily on *Malone* v. *Court of Common Pleas* (1976), 45 Ohio St. 2d 245 [74 O.O.2d 413]. The differences and distinctions between *Malone* and the case at bar are so patently obvious that it would appear that a concerned reader would glean those differences even with just a cursory reading of *Malone*.

In *Malone, a non-civil service* employee of the Juvenile Division of the Court of Common Pleas of Cuyahoga County sought an injunction ordering the court to comply with the terms of a statement of policy entered into between the senior judge of the court and the employees of the court represented by their union. In construing R.C. 2151.13, this court in *Malone* pointed out that pursuant to the statute, employees of the juvenile court "* * * shall serve during the pleasure of the judge." The court went on to say that "[t]hese court employees do not stand in the same contractual relationship to their employer as do school teachers. Court employees *who serve at the pleasure of a court* are in the position of a public officer or employee * * *." (Emphasis added.) Thus, it was the point of the court in *Malone* that the employees had no property interest in their employment but merely served at the pleasure of the administrative judge, without the protection of contract or civil service law.

In the case before us the status of the employees is entirely different. These employees do not serve merely at the pleasure of the court as do the employees in *Malone.* As employees of the probation department of the general division of the common pleas court, the employees herein were appointed by the court and are in the classified service of the civil service of the county. Thus, they do not serve merely at the pleasure of the court. R.C. 2301.27 provides, in part, that "[a]ll positions within such department of probation shall be in the classified service of the civil service of the county." As such, they have a legally enforceable entitlement, pursuant to R.C. 124.34, to continued employment during good behavior and efficient service. In *Jackson* v. *Kurtz* (1979), 65 Ohio App. 2d 152, 157-158 [19 O.O.3d 105], the court said, "we hold that R.C. 124.34 gives employees in the classified service a right to tenure during good behavior and efficient service (claim of entitlement) that cannot be reduced, suspended or removed except for the certain specific causes therein listed." This entitlement, says *Jackson,* is a right — a property right in unabused employment. *Id.* at 158-159. Having established that the status of the employees in *Malone* is so clearly different than that of those in the case *sub judice,* it is not difficult to see that *Malone* is not controlling.

The next question arising, then, is whether under the facts — the status of the employees and the relationship of the parties — did the appellees (as asserted by the majority opinion) as a public employer lack the authority to collectively bargain with court employees? I am sure that today's decision will come as a great surprise to employers and employees who have been bargaining collectively in the public sector for many years (twenty years in the case before us) and to those who thought they knew what the teachings of this court were in *Dayton Teachers Assn.* v. *Dayton Bd. of Edn.* (1975), 41 Ohio St. 2d 127 [70 O.O.2d 223] (a pre-*Malone* case) and *Civil Service Personnel Assn.* v. *Akron* (1976), 48 Ohio St. 2d 25 [2 O.O.3d 98] (a post-*Malone* case). In short, those cases recognize the right of public employees, under appropriate circumstances, to bargain collectively. There is no showing by the majority herein that these civil service public employees (as contrasted with the at-will employees in *Malone*) and their employer lacked the authority to collectively bargain.

The majority opinion makes the absolute statement that "[d]uring the course of negotiations commencing November 22, 1982, the respondents [appellees] lacked the authority to collectively bargain with court employees." In support of this bold assertion, the majority cites *Malone, supra,* and with a "Cf." designation *F.O.P.* v. *Dayton* (1978), 60 Ohio App. 2d 259 [14 O.O.3d 238] and *American Federation of Employees* v. *Polta* (1977), 59 Ohio App. 2d 283 [13 O.O.3d 284]. We have previously distinguished, herein, *Malone. Malone* is at least arguable for the proposition set forth by the majority. The other two cases are not. *F.O.P.* involves the barring of city supervisors, who are members of a labor union, from participating in collective bargaining on behalf of their union. *Polta* merely says that a county engineer does not have the power or authority to ex-

ecute a collective bargaining argeement with a labor union representing county employees. This power, absent a statute to the contrary (which there happens to be in the case at bar, see R.C. 2301.27) is within the province, says *Polta,* of the county commissioners.

Contrast the foregoing with the holding in *Dayton Teachers Assn., supra,* wherein this court recognized that despite the absence of any explicit statute authorizing collective bargaining between a school board and its employees, a school board was "vested with discretionary authority to negotiate and enter into a collective bargaining agreement with its employees." *Id.* at 132. In *Civil Service Personnel Assn., supra,* this court extended the right to bargain collectively to all public employees under appropriate circumstances. Likewise, even earlier, in *Cuyahoga Cty. Bd. of Mental Retardation* v. *Association* (1975), 47 Ohio App. 2d 28, 40 [1 O.O.3d 168], the court said that, "[i]ndeed, it has been only in recent years that it has been *clearly* stated that public *employers* even have the *power* to *voluntarily* enter into collective bargaining agreements, * * *" (emphasis added in part), citing *North Royalton Edn. Assn.* v. *Bd. of Edn.* (1974), 41 Ohio App. 2d 209 [70 O.O.2d 434].

Having disposed of the "authority" question, attention is now focused on the new public employees bargaining law as codified in R.C. Chapter 4117. I readily concede that under this new law the employees and officers of courts are not entitled to organize, join a union and bargain collectively unless the court-employer chooses to recognize a bargaining unit and agent and to bargain collectively. See R.C. 4117.01(C)(8) and 4117.03(C). The majority uses this fact to buttress its opinion and conclude that "bargaining is strictly a matter of judicial discretion," and then uses the mandamus section of R.C. 2731.03 to fortify its position that mandamus cannot be used to control judicial discretion. I do not dispute the intent and the mandates of R.C. 2731.03 nor the intent and mandates of R.C. 4117.01(C)(8) and 4117.03(C). The reliance of the majority on these provisions, however, is misplaced for two reasons. First, the new bargaining law did not take effect until April 1, 1984. Thus, the matters concerning judicial discretion contained therein have no application to this case in any way, shape or form. All of the contested events between these parties occurred well before the effective date of the Act. Secondly, the court had already entered *voluntarily* into the bargaining process and if any agreement *was* reached on March 29, 1983, then the matter of judicial discretion, that seems to so obsess the majority, had already been exercised freely in favor of the bargaining process. Thus, the collective bargaining Act not being an issue in nor pertinent to this case, the majority's reliance thereon for any purpose is ill-founded.

The next matter to be considered is the conclusion by the majority that mandamus is not properly available for the use of appellants in seeking relief. In finding that the first prong of the three-prong test for mandamus to issue was lacking, the majority says, "[s]imply stated, relators [ap-

pellants] have failed to conclusively prove the existence of a legally enforceable contract or collective bargaining agreement." Of course they have! As yet, appellants have not had the chance to prove *anything*, a matter which will be discussed, *infra*. The majority also states that "[i]n effect, relators [appellants] are seeking to implement and enforce the functional equivalent of a collective bargaining agreement." Rather than as determined by the majority, a reading of appellants' complaint reveals that what is sought is an order requiring appellee Curran to *sign* the contract that appellants say was agreed to by the parties. Obviously, as a condition precedent to any required signing, appellants would have to prove that an agreement had been reached by the parties and that all that remained to be done was the execution of the instrument. Can the majority really seriously question that if appellants proved there was an agreement that they (appellants) would not be entitled to the requested relief — the signing of the agreement by appellee Curran and the abiding by its terms?

The second prong of the test for mandamus is even more elementary in this case. The majority says that "[s]ubsequent to the enactment of the collective bargaining Act, the determination to recognize collective bargaining within the courts became a matter of judicial discretion. As such, there is no absolute legal duty which would warrant granting the extraordinary remedy of mandamus in the present case." These statements are used to show that appellees do not have a clear legal duty to perform the act sought — to wit: the signing of the agreement. Once again the majority misses the mark. I have previously shown herein that the collective bargaining Act has no legal significance to the matter before us. In addition, all would concede that the appellees were not required by specific labor legislation to enter into an agreement — then or now. However, that is not the case here. Once the appellees voluntarily started down the road of recognition, bargaining and subsequent agreement (if there was an agreement), can it be in candor questioned that appellees were under a clear legal duty to perform the act of signing and then to live by the agreement?

To satisfy the third prong of the test for mandamus to issue, it must be determined whether appellants have a plain and adequate remedy in the ordinary course of the law. If they do, then mandamus will not issue. If they do not, then, if the other prongs of the test are satisfied, mandamus will issue. The majority says that "[t]he proper vehicle for resolving this issue is through the filing of a declaratory judgment action in the court of common pleas" and "* * * that a declaratory judgment proceeding would provide a plain and adequate remedy." These statements are not only naive — they are just plain wrong. The mere existence of a remedy in the ordinary course of law does not necessarily bar the issuance of a writ of mandamus. See *State, ex rel. Emmich,* v. *Indus. Comm.* (1947), 148 Ohio St. 658 [36 O.O. 265]; *State, ex rel. Cody,* v. *Toner* (1983), 8 Ohio St. 3d 22; *Eudela* v. *Rogers* (1984), 9 Ohio St. 3d 159, 162, Clifford F. Brown, J.,

dissenting. The question is whether such remedy is, under the circumstances, adequate. *Cody, supra,* at 23.

In the instant case the appellants have alleged that the parties entered into an agreement on March 29, 1983. The term of that agreement, as alleged, was for a period of three years, terminating on January 31, 1986. To require the appellants to litigate a declaratory judgment action would be to require them to engage in a futile act. By the time any final determination would be made in the declaratory judgment action, the agreement would have long since terminated and expired. If the appellants were successful in such a proceeding, what would they have won? Theirs would be a hollow victory at best. Accordingly, the remedy of a declaratory judgment action cannot be said to be "adequate under the circumstances." Appellants need an early determination of their rights, and mandamus is the only remedy that can achieve that determination in an adequate fashion. See, generally, *State, ex rel. Dollison,* v. *Reddy* (1978), 55 Ohio St. 2d 59 [9 O.O.3d 220]; *State, ex rel. Cody,* v. *Toner, supra.*

Therefore, it appears that if the appellants are able to show that an agreement was reached, appellants would have a clear legal right to the relief requested, appellees would have a clear legal duty to perform the requested acts, and appellants would not have an adequate remedy at law. Thus, a writ of mandamus, under the circumstances, should issue.

However, neither I nor the majority has yet discussed in detail the only real issue in this case. The court of appeals terminated appellants' action with the statement that "[r]espondent's [appellee's] motion to dismiss the complaint seeking a writ of mandamus is granted." Appellees had filed, on April 27, 1984, a motion to dismiss or in the alternative a motion for summary judgment. In this case the court of appeals was sitting as a trial court, the action being one which invoked the original jurisdiction of the court. It is difficult to determine from the entry filed by the court of appeals on July 12, 1984 whether the court dismissed the case pursuant to Civ. R. 12(B)(6) or after granting summary judgment pursuant to Civ. R. 56. In any event, it makes very little difference.

The court of appeals, as did the majority herein, found that "[r]espondents [appellees] were under no such legal duty to sign this agreement for the law did not require nor authorize such action." As did the majority herein, the court of appeals relied heavily on *Malone* and the new public employees bargaining Act. With regard to "authorization for such action," I have already shown how that reliance was misplaced. Likewise, I have conceded that there was no legal duty on appellees to bargain with their employees. Whether, as decided by the court of appeals, "respondents [appellees] were under no such legal duty *to sign* this agreement" (emphasis added) is another question altogether. If the existence of an agreement as pled, and attached to appellants' complaint, could have been proven by appellants, would then the court of appeals and the majority herein be heard to say that there was no legal duty or obligation on ap-

pellees to sign the agreement? Are courts permitted to ignore the rules by which others are bound?

Today's opinion says, "[s]imply stated, relators [appellants] have failed to conclusively prove the existence of a legally enforceable contract or collective bargaining agreement." This statement is difficult to comprehend in light of the fact that the appellants attached a copy of the 1983-1986 collective bargaining agreement to their complaint and placed an affidavit in the record supporting the existence of a valid, binding agreement. A review of the affidavit of Patricia A. Moss is revealing. Her sworn affidavit testimony states in part:

"5. On March 29, 1983, the two negotiating committees finally reached an agreement on a 1983-1986 Statement of Policy. We shook hands on the agreement — with the complete understanding that it would become binding on both sides upon ratification of the agreement by the probation department chapter of AFSCME Local 1746.

"6. Two days later, on March 31, 1983, the membership ratified the 1983-86 Statement of Policy. I notified John Curran on the very same day of the membership's ratification of the agreement. Upon being informed of the ratification, Mr. Curran requested that I prepare a list of ratified changes in the 1980-83 Statement of Policy, so that his assistant, Mary Grealis, could prepare the 1983-86 Statement of Policy in typewritten form. On or about May, 1983, William C. Petite, Chief Negotiator for the Common Pleas Court, requested that I convey the list of ratified changes to Mr. Curran. The list of ratified changes was sent to Mr. Curran on May 20, 1983. A copy of the transmittal letter and the list of changes is attached as Affidavit Exhibit B."

Of course, the affidavit of administrator Curran denies much of what Moss swears is true.

Therein lies the point. I find it difficult to understand how the majority can say appellants have failed to prove their case when there has been no evidentiary hearing in this matter. If the majority chooses not to accept the collective bargaining agreement in the record as being valid, I can understand that, but then, at the very least, the majority should give appellants a chance to prove the validity of the agreement. Instead, the majority ceremoniously announces that appellants have failed to meet their burden of proof, and then slams the evidentiary door shut so appellants have no opportunity to meet that burden.

If the court of appeals dismissed appellants' complaint pursuant to Civ. R. 12(B)(6), then that was error. This court held in *O'Brien* v. *University Community Tenants Union* (1975), 42 Ohio St. 2d 242 [71 O.O.2d 223], that "[i]n order for a court to dismiss a complaint for failure to state a claim upon which relief can be granted (Civ. R. 12[B][6]), it must appear beyond doubt from the complaint that the plaintiff can prove no set of facts entitling him to recovery. * * *" Here it should be clear that if the appellees had authority to contract, and appellants could prove that they

did in fact contract, would not appellants be entitled to an order requiring appellees to sign the formal agreement and be bound by its terms?

Conversely, if the court of appeals dismissed the complaint pursuant to Civ. R. 56, then this also was error. Clearly, we have in this case genuine issues of material fact and thus the moving party (appellees) would not be entitled to judgment as a matter of law. "A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor." Civ. R. 56(C). Assuming the authority of appellees to contract if they chose, were appellants given any of the rights and protections as mandated by Civ. R. 56? I think not.

In my judgment the decision of the court of appeals should be reversed. The cause should be remanded to said court for further proceedings including an evidentiary hearing before the court or special master to determine if appellants can prove that an agreement was reached. If they can, then the writ should issue. All appellants seek is their day in court!

SWEENEY, J., concurs in the foregoing dissenting opinion.