NEALON, Appellant,

v.

CITY OF CLEVELAND, Appellee.

[Cite as *Nealon v. Cleveland* (2000), 140 Ohio App.3d 101.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 77250.

Decided Oct. 30, 2000.

102

[black redaction bars]

---

*Lowe, Eklund, Wakefield Co., L.P.A.,* and *Dennis P. Mulvihill,* for appellant.

*Cornell P. Carter,* Director of Law, *Matthew T. Brady,* Chief Assistant Director of Law, and *Jennifer C. Heinert,* Assistant Director of Law, for appellee.

---

JAMES M. PORTER, Judge.

Plaintiff-appellant Daniel Nealon appeals from the summary judgment entered in favor of defendant-appellee city of Cleveland on his claim that the city breached his employment contract to join the Law Department of the city. Plaintiff claims that material issues of disputed fact precluded granting of summary judgment. We find no error and affirm.

On March 10, 1998, former Chief Assistant Director of Law for the Labor and Employment Law Section of the city, Joseph Jerse, interviewed plaintiff for the position of Assistant Director of Law in that section. At the time, Jerse questioned plaintiff's ability to aggressively represent the city because his experience had been primarily on the employee/union side and he had no employer/management experience. Jerse did not offer him a job but indicated that it was a long process and his employment application could be derailed at any time.

A few days after the Jerse interview, plaintiff called Jerse to tell him that he had received an offer from Diemert & Associates, a law firm. Plaintiff then received a call from the city, asking him to come in for an interview with the then-Director of Law, Sylvester Summers. Plaintiff interviewed with Summers, and claims that Summers offered him a position with the Law Department and that plaintiff accepted on the spot. Lessie Melton, the City's Chief Counsel, and Joe Jerse congratulated plaintiff at the time and said they would be calling him for a urine/drug test. However, an internal hiring process called for the circulation of a Personnel Identification Document ("PID") in which various city administrators had to sign off on the hire, up to and including the Mayor.

Mayor Michael R. White voiced concern to then-Chief Counsel, Lessie Milton, about plaintiff's background as a plaintiffs' employment law attorney. Plaintiff

interviewed with Joseph Nolan, then-Director of Personnel and Human Resources for the city, who worked directly with the city's labor attorneys. Nolan's impression of plaintiff was that he was not the best or worst candidate interviewed. He doubted that plaintiff could be aggressive enough to represent the management side in labor disputes.

In early May 1998, the decision not to hire plaintiff was made and communicated to him. The city claims that plaintiff was never offered the position for which he interviewed. Plaintiff never received a written offer or any other written document evidencing his employment. The PID initiated during plaintiff's candidacy was never fully executed, and a copy of it was not found. The city's Division of Accounts has no record that plaintiff was ever on the payroll because they never received a PID authorizing them to initiate active employment status. Plaintiff never received a start date. He never received orientation or benefits information because only active employees, for whom there are signed PIDs and initiated payroll, received this information.

The city contends that the Director of Law had no independent authority to create an employment contract with plaintiff. The city further contends that no individual may be hired, receive payroll or benefits, or receive a start date or otherwise obtain employment status without the written approval of the Division, the Department, the Director of Personnel, the Executive Assistant for the Department, and the Mayor on the PID form. If the Director of Law approved a candidate, he could conditionally offer him a position; however, according to the city, the Director's decision does not become final, and a candidate is not hired until the PID is approved and signed by the necessary officials, up to and including the Mayor. Plaintiff's employment was never approved by all of these officials, and a PID was never executed in full authorizing his employment.

On January 11, 1999, plaintiff filed his complaint against the city, alleging breach of contract, promissory estoppel, and religious discrimination. On September 7, 1999, after answering plaintiff's complaint and conducting discovery, the city filed its motion for summary judgment. Plaintiff filed his brief in opposition on October 7, 1999. Plaintiff contended that he did not know about the city's internal PID approval process; the Law Director offered him the job which he accepted; and the Law Department put his name on a phone directory and organizational chart. On October 18, 1999, the trial court journalized its entry granting defendant's motion for summary judgment without opinion or explanation. A timely appeal ensued.

We will address plaintiff's assignments of error in the order presented.

"I. The trial court erred in granting defendant-appellee's motion for summary judgment on the issue of breach of contract."

■ Appellate review of summary judgments is de novo. *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241, 244–245; *Zemcik v. LaPine Truck Sales & Equip. Co.* (1998), 124 Ohio App.3d 581, 585, 706 N.E.2d 860, 863–864. The Ohio Supreme Court recently restated the appropriate test in *Zivich v. Mentor Soccer Club* (1998), 82 Ohio St.3d 367, 369–370, 696 N.E.2d 201, 204, as follows:

"Pursuant to Civ.R. 56, summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor. *Horton v. Harwick Chem. Corp.* (1995), 73 Ohio St.3d 679, 653 N.E.2d 1196, paragraph three of the syllabus. The party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 292–293, 662 N.E.2d 264, 273–274."

■ Once the moving party satisfies its burden, the nonmoving party "may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Civ.R. 56(E); *Mootispaw v. Eckstein* (1996), 76 Ohio St.3d 383, 385, 667 N.E.2d 1197, 1199. Doubts must be resolved in favor of the nonmoving party. *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 358–359, 604 N.E.2d 138, 140–141.

■ Plaintiff relies on Cleveland Codified Ordinance 125.01 to support his contract claim. Section 125.01 states that "the Director of Law may appoint such assistant directors of law as he deems necessary for the proper conduct of the work of the civil branch * * *." The city contends that the Director has the power to appoint, but that he does not have the power to create an employment contract on behalf of the city.

■ We find that plaintiff misconceived his prospective relationship with the city and that that misconception is carried forward into his appellate brief. As the applicable law portrays, the city is not bound by traditional contract principles (offer, acceptance, consideration, mutuality) in its relationships with its employees.

■ There can be no breach of contract in this case because, as a matter of law, there was, and can be, no formation of an employment contract with the city for someone in plaintiff's position. It is evident that a city employee, such as an assistant director of law, holds his position as a matter of law, not by contract. At least fifty years ago, the Ohio Supreme Court established that principle in

*State ex rel. Gordon v. Barthalow* (1948), 150 Ohio St. 499, 38 O.O. 340, 83 N.E.2d 393, where paragraph one of the syllabus states:

"A public officer or public general employee holds his position neither by grant nor contract, nor has any such officer or employee a vested interest or private right of property in his office or employment. (The holding in the case of *City of Cleveland v. Luttner* [1915], 92 Ohio St. 493 [111 N.E. 280], to the effect that there is a contract between a public officer and the public he serves, overruled.)"

After reviewing a long line of precedents, the Supreme Court stated as follows at 509–511, 38 O.O. at 344, 83 N.E.2d at 397–398:

"In *Taylor v. Beckham* [1900], 178 U.S. 548, 577, 44 L.Ed. 1187 [1200], 20 S.Ct. 890 [900], the Supreme Court of the United States, speaking through Chief Justice Fuller, said:

" 'The decisions are numerous to the effect that public offices are mere agencies or trusts, and not property as such. Nor are the salary and emoluments property, secured by contract, but compensation for services actually rendered. * * * In short, generally speaking, the nature of the relation of a public officer to the public is inconsistent with either a property or a contract right.'

"This doctrine was reaffirmed in the cases of *Cave v. State ex rel. Newell* [1918], 246 U.S. 650, 62 L.Ed. 921, 38 S.Ct., 334 and *Snowden v. Hughes* [1944], 321 U.S. 1, 88 L.Ed. 497, 64 S.Ct. 397.

"The principle that a public officer or public general employee does not hold his position *ex contractu* not only rests upon the great weight of authority but upon sound reason and logic. To constitute a valid contract there must be mutuality in the agreement, and yet it is obvious that, if a public officer or public general employee resigns before his term expires, the political subdivision which he served has no recourse against him. *Reiter v. State ex rel.* [1894], 51 Ohio St. 74, 36 N.E. 943, 23 L.R.A. 681; *Ratterman v. State* [1887], 44 Ohio St. 641, 644, 10 N.E. 678. Likewise, if the relationship between the public officer or public general employee and the public he serves is contractual, the public itself cannot vary the terms of the contract, and yet it is universally held that, in the absence of constitutional or other legal restraint, the terms, emoluments, and the duties of the office or employment may be changed or employment abolished without right of redress upon the part of the holder thereof.

" * * *

"In the case of *State ex rel. Clinger, Pros. Atty., v. White et al., Bd. of Commrs.* [1944], 143 Ohio St. 175, 179, 54 N.E.2d 308 [310], Judge Matthias quoted with approval a statement from 46 Corpus Juris, 1014, Section 233, as follows:

" ' "The person rightfully holding an office is entitled to the compensation attached thereto; this right does not rest upon contract, and the principles of law governing contractual relations and obligations in ordinary cases are not applicable. * * * The right to the compensation attached to a public office is an incident to the title to the office and not to the exercise of the functions of the office; hence, the fact that officers have not performed the duties of the office does not deprive them of the right to compensation, provided their conduct does not amount to an abandonment of the office." ' "

*Barthalow* has been followed in a steady line of cases down to current times. See *Fuldauer v. Cleveland* (1972), 32 Ohio St.2d 114, 122, 61 O.O.2d 374, 378–379, 290 N.E.2d 546, 551–552; *Malone v. Cuyahoga Cty. Court of Common Pleas* (1976), 45 Ohio St.2d 245, 248, 74 O.O.2d 413, 414–415, 344 N.E.2d 126, 128–129; *State ex rel. Ohio Council 8 v. Spellacy* (1985), 17 Ohio St.3d 112, 116, 17 OBR 260, 263–264, 478 N.E.2d 229, 232–233; and *Stauffer v. Ohio Dept. of Transp.* (1989), 63 Ohio App.3d 248, 252, 578 N.E.2d 542, 544–545. As a result, there are no written employment contracts for city employees in the Law Department and, accordingly, no cause of action available for breach of a contract. City employees, once hired, are employees at-will, serving at the pleasure of the administration. Public employment is a matter of law, not contract.

The city's evidence revealed that none of the currently employed Assistant Directors of Law has a written contract. These employees are officially "hired" when the internal process is satisfied, including a PID signed by all necessary parties. This is why Mr. Palombo, who was hired at the same time that plaintiff was interviewing, did not receive a written contract of employment but nonetheless was hired. When the decision was made to hire Palombo, the internal procedures necessary to employ him were completed. These procedures included completing a PID signed by all necessary parties, initiating payroll in the Division of Accounts, informing Palombo of the decision to hire him and giving him a starting date.

These internal procedures were not completed in plaintiff's case because, during his candidacy, the decision was made not to hire him. Whether there was an offer extended to him, whether it was conditional or unconditional, or whether he accepted it and thought he was hired are all immaterial considerations. His hiring by the city was never consummated. He performed no duties for the city. He had no contract with the city, as a matter of law, and consequently there could be no breach thereof.

Assignment of Error I is overruled.

"II. The trial court erred in granting defendant-appellee's motion for summary judgment on the issue of promissory estoppel."

▮▮▮ Plaintiff could not establish all of the required elements of the promissory estoppel exception to at-will employment. Those elements are (1) the employer made a promise clear and unambiguous in its terms to the employee, (2) the employee relied on that promise to his detriment, (3) the reliance was reasonable and foreseeable, and (4) the employee was injured by the reliance. *Cohen & Co. v. Messina* (1985), 24 Ohio App.3d 22, 26, 24 OBR 44, 48–49, 492 N.E.2d 867, 871–872. The trial court properly granted summary judgment because reasonable minds can conclude only that the city did not make a clear and unambiguous promise of employment to plaintiff and that there was no reasonable reliance.

▮▮▮ As we stated above, the plaintiff had no employment relationship with the city as a matter of law. That being the case, there is no basis for application of the doctrine of promissory estoppel. Since "any 'representations' [to plaintiff] were made without the authority to act, there can be no promissory estoppel. Where there is an entire absence of power to act originally, there can be no room for an estoppel to arise afterwards." (Citations omitted.) *West v. Bentleyville* (1987), 42 Ohio App.3d 95, 96, 536 N.E.2d 401, 402. There could be no detrimental reliance by plaintiff on such representations, because under Ohio law, plaintiff was charged with the knowledge that the Director of Law could not make a binding offer of employment. "Individuals dealing with municipal corporations are charged with notice of all statutory limitations on the power of such corporations, and their agents, and must, at their peril, ascertain whether all necessary statutory requirements relative to the subject matter of the transaction involved have been complied with." *Kimbrell v. Seven Mile* (1984), 13 Ohio App.3d 443, 13 OBR 532, 469 N.E.2d 954, paragraph two of the syllabus. Accordingly, Ohio law requires that "whoever relies on the conduct of public authorities must take notice of the limits of their power." *Cooney v. Independence* (Nov. 23, 1994), Cuyahoga App. No. 66509, unreported, 1994 WL 663453.

▮▮▮ Furthermore, the position plaintiff sought is an at-will position, terminable without cause at any time and with no right to employment for any duration. Even if plaintiff could establish that he accepted an unconditional offer of employment, he would be only an at-will employee. Any alleged employment agreement is at-will and terminable by either party where it fails to specify a certain term or duration. *Henkel v. Educational Research Council of Am.* (1976), 45 Ohio St.2d 249, 74 O.O.2d 415, 344 N.E.2d 118, syllabus.

Even if it is assumed that a conditional offer of employment was made by Director Summers, there was not a clear promise of employment for any term or tenure, which is a requirement of promissory estoppel.

Accordingly, even if plaintiff's allegations of an unconditional offer are taken as true, he can prove no set of facts to recover on his claim for promissory estoppel. At best, he was an at-will employee without any specific tenure. His claim of promissory estoppel is without merit.

Assignment of Error II is overruled.

"III. The trial court erred in granting defendant–appellee's motion for summary judgment on the issue of religious discrimination."

■■■ Plaintiff claims that Jerse told him that he was not hired because of his priesthood background. Plaintiff argues that this is enough evidence to create a question of fact as to whether the city discriminated against him because of his religious affiliation.

■■■ Plaintiff bears the initial burden of establishing a *prima facie* case of religious discrimination by a preponderance of the evidence. *Seale v. Springfield* (1996), 113 Ohio App.3d 384, 388, 680 N.E.2d 1286, 1288–1289. The trial court properly granted summary judgment because plaintiff could not establish genuine issues of material fact with regard to the elements of religious discrimination under R.C. Chapter 4112. In order to avoid summary judgment, a plaintiff alleging discrimination must present sufficient evidence not only that he was a member of a protected class, but also that his protected status was the "but for" cause of the alleged adverse employment action. *Mitchell v. Toledo Hosp.* (C.A.6, 1989), 878 F.2d 382, 1989 WL 67987. Plaintiff cannot establish a *prima facie* case because there is no indication that he was a member of a protected class and no evidence that religious beliefs played a role in the decision not to hire him. Although plaintiff was an ordained Catholic priest at one time, reasonable minds viewing the evidence could conclude only that his Catholicism was not an issue in the employment decision.

Plaintiff's initial interview was conducted by Assistant Law Director, Joseph Jerse, a Catholic, whose brother is a priest. The only fact plaintiff offers as evidence of religious discrimination is his own allegation that Jerse told him in this initial interview that someone may have a problem with his having been a priest and because he once represented the Nation of Islam in a misdemeanor crime. Of course, Jerse also told him in that initial interview that his evaluation could get derailed at any point in the hiring process because his "background" was much different from what a management lawyer would bring.

No inquiry was made by any city official into the beliefs of the Catholic Church or the Nation of Islam. Plaintiff has never indicated that the beliefs of either religion were a concern in the interview process; he merely points to the fact that Jerse and Melton allegedly told him that he was not hired because "it was like they told him." He took this to mean because he was a former Catholic priest. Such speculation is not sufficient evidence to support a religious discrimination claim. Reasonable minds viewing the evidence could not conclude that the city decided not to hire plaintiff because of his religious background.

 Furthermore, even if plaintiff could establish a *prima facie* case of religious discrimination, the city articulated legitimate, nondiscriminatory reasons for its decision not to hire him. Once a legitimate nondiscriminatory reason is given, plaintiff has the burden to demonstrate that the nondiscriminatory reason was merely a pretext for impermissible discrimination. *McDonnell Douglas Corp. v. Green* (1973), 411 U.S. 792, 804, 93 S.Ct. 1817, 1825, 36 L.Ed.2d 668, 678–679. The city contends that the plaintiff was not hired because the plaintiff was not the most qualified candidate for the job. Joseph Nolan, Joseph Jerse, and Mayor White, all of whom were involved in the hiring process, were concerned with his lack of experience representing management in defending employment cases. Plaintiff, himself, agreed that he had no labor and employment-defense experience. Plaintiff did not produce any credible evidence that the city's legitimate reason for not hiring him is a pretext for discrimination. Therefore, the trial court properly granted the city's motion for summary judgment as to plaintiff's religious discrimination claim.

Assignment of Error III is overruled.

*Judgment affirmed.*

O'DONNELL, P.J., and TIMOTHY E. MCMONAGLE, J., concur.