## BRAINARD

v.

## CITY OF TOLEDO et al.

2001-Ohio-4352.]

Court of Common Pleas of Ohio,
Lucas County.

No. CI00–3089.

Decided Oct. 24, 2001.

Charles Niehaus, for plaintiff.

James G. Burkhardt and Barbara E. Herring, for defendants.

---

JUDITH ANN LANZINGER, Judge.

{¶ 1} This employment action is before the court upon a motion for summary judgment filed by defendants. Upon consideration of the pleadings, arguments of counsel, and all evidence submitted, pursuant to Civ.R. 56, the court grants the motion.

I

{¶ 2} A motion for summary judgment will be granted only when, after the record evidence is read most favorably for the opposing party, there is no genuine issue over any material fact and the party filing the motion is entitled to judgment as a matter of law. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 375 N.E.2d 46; Civ.R. 56(C).

{¶ 3} A party who claims to be entitled to summary judgment on the ground that a nonmovant cannot prove its case bears the initial burden of (1) specifically identifying the basis of its motion, and (2) identifying those portions of the record that demonstrate the absence of a genuine issue of material fact regarding an essential element of the other party's case. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264. The party filing the motion satisfies this burden by

calling attention to some competent summary judgment evidence, of the type listed in Civ.R. 56(C), affirmatively demonstrating that the nonmovant has no evidence to support his or her claims. Id. Once this initial burden has been satisfied, the burden shifts to the responding party to set forth specific facts, in the manner prescribed by Civ.R. 56(E), indicating that a genuine issue of material fact exists for trial. Summary judgment should be granted with caution in order to protect the nonmoving party's right to trial. *Viock v. Stowe–Woodward Co.* (1983), 13 Ohio App.3d 7, 14–15, 13 OBR 8, 467 N.E.2d 1378.

## II

{¶ 4} Viewed most favorably for plaintiff, the facts follow. In April 1996, plaintiff Mary J. Brainard applied for the position of Director of the Department of Natural Resources with the city of Toledo. Brainard was turned down for that particular position because she just had graduated from college and was without experience. In response to the question whether she were willing to discuss other employment opportunities within the city, Brainard met with Dan Hiskey, the city's Assistant Chief Operating Officer, and later with Mayor Carleton Finkbeiner. Although she was offered a position paying $15.00 per hour but without benefits or job security, she refused.

{¶ 5} In December 1996, Brainard contacted Hiskey to again generally inquire about a job with the city. No specific job position was discussed until she met with Jim Barney, the new Director of Natural Resources, on January 14, 1997. A full-time position with full benefits was mentioned then. According to Brainard, although no salary discussion occurred at that meeting, she was asked to submit her salary and benefit demands and felt that a full-time permanent position would result even though the position would not be for a set period.

{¶ 6} Two days later, Brainard again met with Barney and was told that her key role would be creating, implementing, and overseeing a "Partners–In–Parks Program." She understood that the position under discussion would have to be created. Brainard told Barney that she would need a cellular phone, computer, vehicle, and salary and benefits. He responded that he could pay her $50,000, would try to get her more, and was going to put together a full benefits package with the Mayor.

{¶ 7} Brainard again met with Barney on February 24, 1997. The Mayor's Executive Assistant, Arturo Quintero, was also present and covered job responsibilities that Brainard was going to fill. No title or compensation was discussed.

{¶ 8} On March 5, 1997, Barney called Brainard and said that he was waiting on the Finance Department and Human Resource Department to approve her title and salary. According to Brainard, he also indicated that he was unfamiliar

with the city's hiring practices but that Human Resources would have to approve her title and salary before she could begin work. Two days later Barney told Brainard she could begin work April 15, since Toledo City Council had approved funding for her position. As Brainard wished to start work earlier, she agreed to be paid by a purchase order.

{¶ 9} Brainard began work on March 17 and prepared a purchase order invoice requesting a payment of $3,840 for services beginning that day. On March 20, she met with Barney and confirmed an annual payment rate of $49,920, consistent with the purchase order. Brainard expected to be appointed to a city position but was informed that she needed to complete an application and submit it to the civil service office. She completed an application on March 27, but was notified that she failed to meet the educational requirements for the position of Administrator–Natural Resources position. After she appealed this determination and the Toledo Civil Service Commission decided in her favor, her name was placed on the eligibility list.

{¶ 10} On April 14, April 28, May 1, May 12, and May 26, Brainard submitted additional invoices to the city for her continued services. On June 4, 1997, she was informed that the city could not continue to pay her, since the $10,000 purchase order amount set by city charter would be exceeded. There is no dispute that Brainard was paid for all of her submitted invoices and was issued an additional check covering six unpaid days though June 4, 1997, reimbursement for travel and out-of-pocket expenses, plus ten percent interest. Before ending her employment with the city, Brainard began looking for another job, asking Barney and Hiskey to write her a reference.

{¶ 11} In December 1997, the "Administrator–Natural Resources" Civil Service Eligibility List including Brainard's name was certified to the Department of Natural Resources. Brainard was informed that the city would be interviewing for the position. She was given a date, time, and location for an interview but failed to appear as scheduled.

{¶ 12} Brainard filed this nine-count action on June 23, 2000, against the city of Toledo, asserting misrepresentation, negligent misrepresentation, breach of oral contract to hire, breach of oral contract, breach of implied contract, quasi-contract, unjust enrichment, promissory estoppel, and quantum meruit. The city of Toledo now seeks summary judgment.

## III

{¶ 13} The city argues that it is entitled to summary judgment on all of Brainard's contract claims, since there was no approved civil service position available to her and she had no legal right to rely on any "assurance" made by

the Director of Natural Resources. As to Brainard's various estoppel claims, the city contends that these claims are all unavailable against a municipal corporation. Finally, the city asserts that Brainard's claims for intentional and negligent misrepresentation fail, since there is no evidence of fraud and negligent misrepresentation does not apply to Brainard's situation. Each argument will be addressed in turn.

### A. Breach–of–Contract Claims

{¶ 14} Counts three through six of the complaint deal with the existence of a standard contract. City employees, however, hold their positions as a matter of law, not contract. *Nealon v. Cleveland* (2000), 140 Ohio App.3d 101, 746 N.E.2d 694. In *Nealon*, the plaintiff accepted a position with the Cleveland Law Department. Although the city law director had offered Nealon the job, the hiring process was not complete, since the necessary city administrators never signed off on a personnel identification document as required. Two months later, it was decided not to hire the plaintiff. Nealon filed suit alleging breach of contract and promissory estoppel. The Eighth District Court of Appeals found that a city is not bound by traditional contract principles because city employees hold their positions as a matter of law, not contract. The court stated that a director's offer of employment and its acceptance does not bind a city unless all of the formal steps toward hiring have been completed, including written approval on a personnel identification document by all necessary officials. Id. at 108, 746 N.E.2d 694. The court concluded:

{¶ 15} "Whether there was an offer extended to him, whether it was conditional or unconditional, or whether he accepted it and thought he was hired are all immaterial considerations. His hiring by the city was never consummated * * * he had no contract with the city, as a matter of law, and consequently, there could be no breach thereof." Id. at 108, 746 N.E.2d 694. See. also, *Kimbrell v. Seven Mile* (1984), 13 Ohio App.3d 443, 13 OBR 532, 469 N.E.2d 954 (no contract between clerk-treasurer and village, despite assurances, because village council's actions did not comply with statutory formality necessary to create new position and adopt salary for it); *West v. Bentleyville* (1987), 42 Ohio App.3d 95, 536 N.E.2d 401 (despite representations of two councilmen and police chief that police officer could retire and then be rehired, officer had no entitlement to position because statute gave the Mayor hiring authority).

{¶ 16} Here, just as in *Nealon*, Brainard's hiring was never consummated by the city. There was no employment relationship as a matter of law, since she never went through the civil service hiring process to become a regular, full-time city employee. Her name was not placed on the civil service eligibility list for a full-time position until May 1997. Brainard herself agreed to work in a

contract capacity, being paid by purchase order. When her name was placed on the list and an interview was scheduled, Brainard ignored the interview because she was no longer interested in city employment. (Brainard Deposition, dated October 30, 1998, at 161.)

{¶ 17} The cases cited above also explain that individuals who deal with municipal corporations are expected to know the statutory limitations on the entity's power. They must, "at their peril, ascertain all the necessary statutory requirements relative to these transactions have been complied with," including whether those with whom they are dealing had the legal authority to employ them. *Kimbrell v. Seven Mile*, supra. See, also, *Goempel v. E. Liverpool Civ. Serv. Comm.* (Apr. 10, 1992), 7th Dist. No 90–C–65, 1992 WL 80070.

{¶ 18} Here, the position Brainard discussed with Barney did not yet exist. She knew it would have to be created and approved as to title and salary by the Finance Department and Human Resources Department. (Brainard depo. dated October 30, 1998, at 133). She also knew that in order to start work before her official employment she would be required to provide Purchase Order Agreements. (Brainard depo. dated October 30, 1998, at 138.) Thus, the only valid contract between Brainard and the city of Toledo arose from these purchase order agreements and invoices submitted. It is undisputed that she received all payments submitted under the purchase agreements plus payment for a balance of six days, reimbursement for a claimed travel, out-of-pocket expenses, and statutory interest.

{¶ 19} For these reasons the city of Toledo is entitled to summary judgment as a matter of law on counts three through six of the complaint.

## Estoppel Claims

{¶ 20} Counts six through nine of Brainard's complaint all deal with alternate theories of estoppel. Recently, the Sixth District Court of Appeals determined that because implied or quasi-contracts by definition do not meet the requisite formalities to form a binding agreement with a municipality, the municipality may not be held liable under those theories. *Cleveland v. Marblehead* (Mar. 23, 2001), 6th Dist. No OT–00–018, 2001 WL 279763. In deciding whether a village could be estopped based upon a communication relied upon by plaintiff, it stated that "equitable estoppel is not an independent cause of action." A government traditionally cannot be estopped in most cases when acting in its capacity as a sovereign.

## Unjust Enrichment

{¶ 21} It is established state precedent that a municipal corporation cannot generally be held liable for quasi- or implied contracts or for claims based

upon the theory of quantum. meruit. *Seven Hills v. Cleveland* (1988), 47 Ohio App.3d 159, 547 N.E.2d 1024. The concepts of quasi-contract, unjust enrichment, and quantum meruit are interrelated. Unjust enrichment arises when one person has unfairly benefited from the services of another. In order to prove a claim of unjust enrichment, one must show that (1) a benefit was conferred by the plaintiff upon the defendant, (2) the defendant had knowledge of the benefit, and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment. *Hambleton v. R.G. Barry Corp.* (1984), 12 Ohio St.3d 179, 12 OBR 246, 465 N.E.2d 1298. If unjust enrichment is found, a quasi-contract provides a remedy allowing the injured party to seek recovery for as much as deserved. See *Caras v. Green & Green* (June 28, 1996), 2d Dist. No. 14943, 1996 WL 407861. In unjust enrichment cases, damages are determined in the amount that the defendant benefited. *Natl. City Bank v. Fleming* (1981), 2 Ohio App.3d 50, 2 OBR 57, 440 N.E.2d 590.

{¶ 22} In this case, Brainard agreed to provide services to the city under a purchase order agreement. Brainard provided her services, submitted the purchase order invoices, and in return was compensated for her work. She is not claiming that she was not compensated for these services and the city of Toledo has not been unjustly enriched. As such, the defendant is entitled to summary judgment as a matter of law on Brainard's unjust enrichment claim.

## Promissory Estoppel

{¶ 23} As for Brainard's promissory estoppel claim, in order to prove a case of promissory estoppel Brainard must show (1) a promise, clear and unambiguous in its terms, (2) reliance by the party to whom the promise is made, (3) reliance that is reasonable and foreseeable, and (4) injury caused by the reliance. *Weiper v. W.A. Hill & Assoc.* (1995), 104 Ohio App.3d 250, 661 N.E.2d 796. Promissory estoppel, just as unjust enrichment, however, does not apply against municipal corporations. *Nealon v. Cleveland,* supra (since no employment relationship exists as a matter of law, there is no basis for application of doctrine of promissory estoppel). *West v. Bentleyville* (1987), 42 Ohio App.3d 95, 536 N.E.2d 401 (since any representation was made without authority to act, no promissory estoppel can exist). *Goempel v. E. Liverpool Civ. Serv. Comm.* (1992), supra (city not estopped from denying plaintiff benefit of civil service laws, as plaintiff had duty to ascertain whether council had legal authority to employ him).

{¶ 24} Brainard is charged under Ohio law with notice of the process to be followed before she could be hired. *Kimbrell v. Seven Mile* (1984), 13 Ohio App.3d 443, 13 OBR 532, 469 N.E.2d 954. This process was never completed, and she never was entitled to the position of Administrator–Natural Resources.

In fact, it was Brainard who declined to proceed when interviews were being conducted. The city of Toledo is entitled to summary judgment as a matter of law on these claims.

### Intentional and Negligent Misrepresentation

{¶ 25} In counts one and two of her complaint, Brainard alleges intentional and negligent misrepresentation. She claims that Barney promised that she would be hired as a regular city employee with a $50,000 salary and various benefits.

### Intentional Misrepresentation

{¶ 26} In order to establish intentional misrepresentation, one must show (1) a representation or, where there is a duty to disclose, concealment of a fact, (2) which is material to the transaction at hand, (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (4) with the intent of misleading another into relying upon it, (5) justifiable reliance upon the representation or concealment, and (6) a resulting injury proximately caused by the reliance. *Burr v. Stark Cty. Bd. of Commrs.* (1986), 23 Ohio St.3d 69, 23 OBR 200, 491 N.E.2d 1101. In Ohio, an action in fraud, based upon representations of future facts, such as continued employment, will not lie. *Glass v. O'Toole* (1930), 36 Ohio App. 450, 173 N.E. 214.

{¶ 27} Brainard claims that Barney represented to her that she would be hired as a regular city employee with a $50,000 salary and various benefits. The only position, however, that the Mayor and the then Assistant Chief Operating Officer Dan Hiskey had previously discussed with her was one of $15.00 per hour without benefits.

{¶ 28} In her discussions with Barney, Brainard knew that he was unfamiliar with the city's hiring practices. (Brainard depo. dated October 30, 1998, at 134.) Barney told her that Human Resources would have to approve her title and salary. (Brainard depo. dated October 30, 1998, at 135.) Brainard provided services for the city and was under a purchase order arrangement in which she agreed to be paid by a purchase order. (Brainard depo. dated October 30, 1998, at 137–138.) Brainard also understood that she had the right to leave the job whenever she decided and that the position was not for a set period of time. (Brainard depo. dated October 30, 1998, at 102.) Barney submitted a requisition for the Administrator–Natural Resources position as soon as it became available. When interviews were set, however, Brainard declined the interview. Since no evidence of fraud exists, Brainard's claim for intentional misrepresentation fails

and the city of Toledo is entitled to summary judgment on Count One of the complaint.

## Negligent Misrepresentation

{¶ 29} The elements of negligent misrepresentation are as follows:

{¶ 30} "One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information." *Delman v. Cleveland Hts.* (1989), 41 Ohio St.3d 1, 4, 534 N.E.2d 835.

{¶ 31} A claim for negligent misrepresentation does not apply for omissions; rather, there must be an affirmative false statement. *Leal v. Holtvogt* (1998), 123 Ohio App.3d 51, 702 N.E.2d 1246.

{¶ 32} In Brainard's case, as stated above, there is no evidence of fraud. Barney attempted to do what he said he would do, which was to get Brainard a full-time position with salary and benefits with the city of Toledo. When the proper steps were taken and an interview was scheduled, it was Brainard who chose not to go to the interview. Without evidence of an affirmative false statement, the city is entitled to judgment as a matter of law on Brainard's negligent misrepresentation claim.

## Judgment Entry

{¶ 33} It is ORDERED that the motion for summary judgment filed by defendants is GRANTED. Judgment is entered in favor of defendants and against plaintiff on all counts of the complaint.

{¶ 34} This is a FINAL APPEALABLE ORDER. No just cause of delay.

Judgment accordingly.