FULDAUER, APPELLANT, *v.* CITY OF CLEVELAND ET AL.,
APPELLEES.

[Cite as Fuldauer v. Cleveland (1972), 32 Ohio St. 2d 114.]

(No. 72-241—Decided December 13, 1972.)

116

117

Mr. *Henry DuLaurence*, for appellant.
Mr. *Richard R. Hollington, Jr.*, director of law, *Messrs. Squire, Sanders & Dempsey, Mr. Daniel J. O'Loughlin* and *Mr. Thomas J. Friel*, for appellees.

CORRIGAN, J. The issues presented are cognate to the constitutionality of the two charter provisions before us.

As urged by appellant, they are divided into five propositions of law.

I.

It is first asserted that:

"The enactment of municipal charter provisions which permanently destroy the right of franchise or self-determination of a minority, either directly or through its legally elected representatives, and prohibits a voice in the enactment of legislation concerning vital governmental functions, necessary for the maintenance and continuance of its municipal government, destroys the basic constitutional rights of the citizens of self-rule and a republican form of government as provided in Article I, Section 1; Article II, Sections 1 and 10; Article V, Section 1 and Article XVIII, Sections 3 and 7 of the Ohio Constitution, and Section 4 of Article IV of the federal constitution."

We disagree with this position in its entirety and hold that through the action of electors, in enacting by an overwhelming vote these two amendments to Cleveland's Municipal Charter, those citizens have established the substantive policy and standards governing policemen's and firemen's salaries and have instructed the council as to the

manner and method of its exercise of legislative power in furtherance of such policy.

Sections 7, 8 and 9 of Article XVIII of the Ohio Constitution provide authority for the citizens of a municipality to adopt and amend their municipal charter and they constitute the ultimate legislative authority therefor.

As this court stated in *Cleveland, ex rel. Neelon,* v. *Locher* (1971), 25 Ohio St. 2d 49, 51:

"The municipal charter is basically the constitution of the municipality. Here, we have a charter provision which specifically directs that council shall enact appropriate legislation to effectuate the purpose of the charter provision. It is a clear legal mandate which places an affirmative duty on the council to act."

Section 24 of the charter, which has been in effect since 1931, clearly demonstrates the intent of the people of the city of Cleveland to retain to themselves, to the exclusion of the council, those matters specifically regulated in the charter, wherein it is provided:

"The legislative powers of the city, *except as reserved to people by this charter,* shall be vested in the council, each member of whom shall be elected from a separate ward. * * *" (Emphasis added.)

In the instant case, the power to change such a charter plan, even if denominated legislative in character, continues to lodge in the municipal corporation; to be changed however, not by the city council but by the city electorate, to whom that particular legislative power has been reserved.

It should be pointed out here that the feasibility or wisdom of these charter amendments is not a matter for our consideration. As we stated in *State, ex rel. Hackley,* v. *Edmonds* (1948), 150 Ohio St. 203, 217:

"* * * But if Section 3 and Section 7 of Article XVIII of the Ohio Constitution are to have any meaning, and are not to be completely emasculated and eviscerated, we are constrained to hold that in matters of local concern the municipality has the right, in adopting its charter, to make pro-

visions that may be silly and unwise. If they prove to be so, the remedy is in the hands of the people who have adopted the charter. A majority of them has the power to amend it."

We reject appellant's contention that these amendments to the charter "* * * destroys the basic constitutional rights of the citizens of self-rule and a republican form of government * * *."

Such charter provisions have no application to a republican form of government, as this court held in paragraph five of the syllabus in *Hile* v. *Cleveland* (1923), 107 Ohio St. 144, appeal dismissed, 266 U. S. 582, viz.:

"The adoption of the city manager plan of government, together with the Hare System of Proportional Representation, in a city charter, under the home-rule amendment to the Ohio Constitution, is not a denial of the republican form of government, and does not contravene Section 4, Article IV of the federal Constitution. Adoption of such a form of government raises a political question, and not a judicial question, and cannot be challenged in the courts."

## II.

As Proposition of Law No. 2, appellant avers that:

"Municipalities may not delegate legislative powers albeit to any other department of the city or to any other municipality or board, commission or other body not connected with, part of or outside of the control of such municipality whether such be by ordinance or charter."

Appellant thus contends that charter amendment Sections 198-1 and 198-2 not only disenfranchise its citizens but constitute an unlawful delegation of power contrary to Sections 3 and 7 of Article XVIII of the Ohio Constitution.

We do not accept that interpretation. By these charter amendments the electors of Cleveland, in the exercise of their power of local self-government, have determined how the wages of their firemen and policemen shall be established and have provided that the city council must adopt the rates established by the wage formula fixed by the pro-

cedure described in such sections. These electors, in the two charter amendments, have imposed upon council the obligation of ascertaining certain facts upon which the legislative policy established in the charter will be effectuated.

As cogently reasoned in appellees' brief, the electors of Cleveland in enacting these charter amendments also took care to provide for self-limiting restraints and to eliminate any notion that they were delegating any local sovereignty to other communities in Ohio. The sections clearly provide that an ordinance fixing compensation shall be enacted only once each year, and not until the next calendar year are Cleveland policemen and firemen eligible for further wage considerations. Nothing automatically happens to Cleveland wage rates simply because another community enacts a wage rate for its safety forces different from that in Cleveland. Ordinances fixing wages in Cleveland and appropriations in furtherance thereof continue to be enacted and authorized as before, not by the electors or legislative bodies of other Ohio cities, but on an annual basis by the council of Cleveland. Further, the wages may go up or down, depending on the results of the annual survey.

An almost analogous question was before the Supreme Court of California in *Kugler* v. *Yocum* (1968), 69 Cal. 2d 371, 445 P. 2d 303. That court approved an initiated ordinance of the city of Alhambra which, in effect, provides that on January 1st of each year the city council shall establish the salaries of Alhambra's firemen at an amount not less than the average salaries for comparable grades or ranks paid to members of the fire departments of the City of Los Angeles and the County of Los Angeles. The ordinance was challenged on the principal ground that the enactment of the ordinance constituted an unlawful delegation of legislative power. It was argued that in fixing the Los Angeles rates as the minimum for Alhambra firemen's salaries, the people of Alhambra had unlawfully delegated their legislative power to the persons who established the salaries for firemen in the City of Los Angeles and the County of Los Angeles.

The California court held that once the pay formula was established by initiative ordinance of the people, such action constituted the legislative determination of the "fundamental issue"; that once the fundamental determination of policy was made, namely, that the Alhambra wages for firemen should be on a parity with Los Angeles salaries, the legislative function was complete. The court concluded that the decision on legislative policy had not been delegated and the subsequent annual implementation of the policy by reference to the Los Angeles salaries was not unlawful.

The formula for salary adjustments, which we have before us in these charter amendments, that tie the adjustments into future events which do not lie within the power or control of the council does not constitute an unlawful delegation of power. It is not unlike a formula which links the wage adjustment to the cost of living index, to average earnings or prevailing wages of a comparable occupation, or to average earnings or prevailing wages generally.

### III.

Appellant presents as Proposition of Law No. 3:

"Municipal charter provisions which make enactment of legislation mandatory for expenditure of municipal funds beyond the 10 mill limitation without 'approval of a majority of the electors' are contrary to Article XII, Section 2 of the Ohio Constitution."

We likewise decline to accept this legal theorem under the facts in this case, because a charter amendment which controls the priority of local expenditures to be made in conformity with Section 2 of Article XII of the Ohio Constitution is a valid exercise of municipal home-rule power.

These amendments do not involve the levy of an additional tax. By the amendments, the electors of Cleveland have established that salaries of policemen and firemen shall be a first priority expenditure from the general fund—and they have such a home-rule prerogative. In addition, the electors have set the standards for salary adjustments.

## IV.

Proposition of Law No. 4, pressed by appellant, reads:

"Municipal charter provisions which permanently prevent an employer-employee determination of salaries and wages of public employees abrogate the freedom of contract as to both city and its employees, and constitutes an abrogation of the freedom of contract under the federal Constitution, and as construed under the provisions of the Bill of Rights of the Ohio Constitution."

We must also refuse to accept this proposal, for the very fundamental reason that a public officer or employee holds his office or position as a matter of law and not of contract.

As this court pointed out in paragraph one of the syllabus in *State, ex rel. Gordon, v. Barthalow* (1948), 150 Ohio St. 499:

"A public officer or public general employee holds his position neither by grant nor contract, nor has such officer or employee a vested interest or private right of property in his office or employment. * * *"

## V.

Finally, appellant urges, as Proposition of Law No. 5, that:

"Municipal charter provisions which attempt to control, enforce the enactment of or establish wages contrary to the limitations as set forth by Article II, Section 34 of the Ohio Constitution are unconstitutional and contravene the specific constitutional prohibition against such enactments."

We do not agree. In the absence of a conflict with the general law, Section 34, Article II of the Ohio Constitution, has no application to a salary formula for policemen and firemen established by amendments to a municipal charter which are carried out annually by ordinance of council.

Appellant argues that charter Sections 198-1 and 198-2 are invalid for the reason that wages and hours of employees may not be regulated except pursuant to Section 34, Article II of the Ohio Constitution, which reads:

"Laws *may* be passed fixing and regulating the hours of labor, establishing a minimum wage, and providing for the comfort, health, safety and general welfare of all employees; and no other provision of the Constitution shall impair or limit this power." (Emphasis added.)

That provision clearly refers only to the power of the General Assembly to enact laws. *Cincinnati* v. *Correll* (1943), 141 Ohio St. 535, 537. It is also obvious on its face that the constitutional provision is not self-executing, but must be augmented by the action of the General Assembly, *i. e.*, "laws may be passed."

However, no law has been passed in which the General Assembly seeks to regulate the wages paid to policemen or firemen employed by municipal corporations.

For the foregoing reasons, we hold that Sections 198-1 and 198-2 of the Charter of the city of Cleveland constitute a valid exercise of home-rule power by the electors of Cleveland. Therefore, the judgment of the majority of the Court of Appeals is affirmed.

*Judgment affirmed.*

O'NEILL, C. J., SCHNEIDER, HERBERT, STERN, LEACH and BROWN, JJ., concur.