CHYLIK ET AL., APPELLEES, *v.* CITY OF CLEVELAND ET AL., APPELLANTS.

(No. 37238—Decided July 20, 1978.)

*Mr. Jack M. Schulman,* and *Ms. Marilyn G. Zack,* for appellees.

*Mr. Joseph W. Bartunek,* for appellants.

DAY, J. This is an appeal by Defendant-Appellant the City of Cleveland (City) from a lower court decision that invalidated two City Ordinances.

On May 24, 1976, the City Council of Cleveland (Council) passed Ordinance Number 1137-75. That ordinance enacted Sections 1.4777 and 1.4778 of the Codified Ordinances of the City. On August 16, 1976, Council passed Ordinance No. 1993-76 which enacted an amended Section 1.4777. The relevant portions of the ordinances[1] provide:

"171.47 Residency Requirements of Officers and Employees.

"(a) * * * any person appointed or hired to any posi-

---

[1] The ordinances were subsequently renumbered Sections 171.47 (formerly 1.4777) and 171.48 (formerly 1.4778).

tion, either in the classified or unclassified service of the City, * * * shall, if appointed or hired after the effective date of this section, be a resident and domiciliary of the City of Cleveland at the time of his appointment or hiring, or if initially appointed from an established civil service list, shall become a resident and domiciliary of the City within thirty days of such appointment, and shall remain a resident and domiciliary in the City during the entire term of his office or employment, whether in the classified or unclassified service of the City." (effective September 21, 1976)

"171.48 Liability for Hiring Nonresidents.

" * * * any officer or employee, having authority to appoint or employ any person to any position in the classified or unclassified service of the City, who knowingly employs a nonresident of the City or who hires such nonresident recklessly and without using reasonable diligence to ascertain the true facts concerning a person's bona fide place of residence and domicile prior to such person being hired or appointed, shall be personally and jointly and severally liable along with the nonresident so hired for any and all compensation so paid to such person who is not a bona fide resident and domiciliary of the City."

On July 22, 1976, plaintiffs-appellees Stephen R. Chylik and James Carney (plaintiffs) brought suit in Common Pleas against the City in their respective official capacities as Commissioner of the City Division of Motor Vehicles and Director of the Cleveland Department of Public Safety. Plaintiffs' amended complaint of August 4, 1976, sought a declaration that ordinance No. 1137-75 (Sections 171.47 and 171.48 Codified Ordinances) conflicted with the City of Cleveland Charter (Charter) as well as with Article XVIII of the Constitution of the State of Ohio. Plaintiffs also sought injunctive relief against enforcement of the ordinance.

The case was submitted to the trial court on the testimony from the preliminary injunction hearing, the pleadings, stipulations, and briefs. The judge held that the authority to enact and enforce a residency requirement was vested solely in the City Civil Service Commission under

Sections 127 and 128 of the Charter.[2] The court then concluded that the ordinances were invalid because they conflicted with this grant of power to the Civil Service Commission (Memorandum of Opinion, Nov. 1, 1976). On November 10, 1976, the court entry declared the ordinances invalid and enjoined their enforcement (Judgment Entry, Nov. 10, 1976).

The City filed a timely appeal and assigned one error:

*Assignment of Error No. 1:*

"The trial court erred in finding that Sections 1.4777 [171.47] and 1.4778 [171.48] of the Codified Ordinances of the City of Cleveland conflict with Sections 127 and 128 of the City's Charter." (Bracketed material added.)

For reasons assessed below, the assignment of error is not well taken.

## I.

There is no federal constitutional impediment to local legislation or regulation that requires any city employee, apparently whether classified or not, to live within the city boundaries, *McCarthy* v. *Philadelphia Civil Service Commission* (1976), 424 U. S. 645, 646-647; see also *Detroit Police Officers Ass'n* v. *City of Detroit* (1971), 190 N. W. 2d 97, 102-104, appeal dismissed (1972), 405 U. S. 950.[3]

---

[2]"*Section 127 Enactment of Civil Service Rules.*

"The Civil Service Commission shall make, promulgate, and when necessary may amend, rules for the appointment, promotion, transfer, lay-off, reinstatement, suspension and removal of City officials and employees in the classified service."

"*Section 128 Required Provisions of Rules.*

"The rules of the Civil Service Commission shall among other things, provide:

"(a) For the standardization and classification of all positions and employments in the classified service of the City, including officers and employees of the Civil Service Commission. * * *

"The Commission shall adopt other rules, not inconsistent with the foregoing provisions of this section as may be necessary and proper for the enforcement of the merit system, and to provide for the procedure of the Commission." (Effective November 9, 1931.)

[3]The Supreme Court later interpreted this dismissal as holding that the residency ordinance at issue was not irrational under the Fourteeenth Amendment. *McCarthy* v. *Philadelphia Civil Service Commission, supra,* at 646.

The sole issue in the instant case is whether Council has the power under the local charter of government to enact and enforce a residency requirement for city employees in the classified service.

## II.

In 1913, the city of Cleveland adopted a charter pursuant to the grant of authority in Article XVIII, Sections 3 and 7 of the Ohio Constitution.[4] The charter is, in effect, a local constitution that defines powers and delegates duties to different branches of municipal government, see *City of Cleveland, ex rel. Neelon*, v. *Locher* (1971), 25 Ohio St. 2d 49, 51. Accordingly, the issue in the case before us must be resolved by reference only to this charter and its history.

The voters of Cleveland amended the city charter in 1931 by adopting Section 74. That section provided:

"Sec. 74 Residence Requirement, Officers and Employees.

"Except as in this charter otherwise provided or as council may specially otherwise provide, every officer and employee of the city of Cleveland must be a resident of Cleveland.

"(Effective November 9, 1931.)"

The voters repealed this section in 1967. This act returned the power to make residency a requirement to that reservoir of power retained *by the people* under Section 1 of the charter.[5]

---

[4]"*Section 3* [*Powers.*]

"Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws."

"*Section 7* [*Home rule.*]

"Any municipality may frame and adopt or amend a charter for its government and may, subject to the provisions of section 3 of this article, exercise thereunder all powers of local self-government."

[5]"*Section 1 General Powers.*

"The inhabitants of the City of Cleveland, as its limits now are, or may hereafter be, shall be a body politic and corporate by name the City of Cleveland, and as such shall have perpetual succession; may use a corporate seal; may sue and be sued; may acquire property in

The only remaining delegation of power to impose a residency requirement as a prerequisite to employment is found in Charter Section 126(2)(c). This section specifically authorizes the Civil Service Commission to promulgate a residency rule for the unskilled labor class of the classified service.⁶ The provision, originally enacted in 1951, re-

---

fee simple or lesser interest or estate by purchase, gift, devise, appropriation, lease, or lease with privilege to purchase, for any Municipal purpose; may sell, lease, hold, manage, and control such property, and make any and all rules and regulations by ordinance or resolution which may be required to carry out fully all the provisions of any conveyance, deed, or will, in relation to any gift or bequest, or the provisions of any lease by which it may acquire property; may acquire, construct, own, lease and operate and regulate public utilities; may assess, levy, and collect taxes for general and special purposes on all the subjects or objects which the City may lawfully tax; may borrow money on the faith and credit of the City; by the issue or sale of bonds or notes of the City; may appropriate the money of the City for all lawful purposes; may create, provide for, construct, regulate and maintain all things of the nature of public works and improvements; may levy and collect assessments for local improvements; may license and regulate persons, corporations and associations engaged in any business, occupation, profession or trade; may define, prohibit, abate, suppress and prevent all things detrimental to the health, morals, comfort, safety, convenience and welfare of the inhabitants of the City, and all nuisances and causes thereof; may regulate the construction, height, and the material used in all buildings, and the maintenance and occupancy thereof; may regulate and control the use, for whatever purposes, of the streets and other public places; may create, establish, abolish and organize offices and fix the salaries and compensations of all officers and employees; may make and enforce local police, sanitary and other regulations; and may pass such ordinances as may be expedient for maintaining and promoting the peace, good government and welfare of the City, and for the performance of the functions thereof. The City shall have all powers that now are, or hereafter may be granted to municipalities by the Constitution or laws of Ohio; and all such powers whether expressed or implied, shall be exercised and enforced in the manner prescribed by this Charter, or when not prescribed herein, in such manner as shall be provided by ordinance or resolution of the Council. (Effective **January 1, 1914.**)"

⁶"*Section 126 General Provisions; classified. Unclassified Service.*
\* \* \*

"2. The classified service shall comprise all positions not specifically included by this Charter in the unclassified service. There shall be in the classified service three classes to be known as the competi-

mained in the charter when the voters repealed Section 74. The fact that the voters eliminated the general prohibition against hiring non-city residents while they retained the narrow one speaks significantly to the intent of the electorate. That intent was to establish a policy to limit severely the power to impose a residency requirement, *cf. Fuldauer* v. *Cleveland* (1972), 32 Ohio St. 2d 114, 117-118. This policy applies both to the legislative branch and to the executive branch as it acts through its agency The Civil Service Commission.

When Council enacted the challenged legislation, it did so in usurpation of power reserved to the people. Because Council did not have the power under the charter to require that city employees reside within the city,[7] the ordinances cannot stand.

*Judgment affirmed.*

KRUPANSKY, P. J., and PATTON, J., concur.

---

tive class, the non-competitive class and the ordinary unskilled labor class. * * *

"(c) The ordinary unskilled labor class shall include all ordinary unskilled labor positions for which it is impractical to give competitive tests. Such positions shall be filled from unskilled labor eligible lists established and maintained by the Commission. The Commission shall register applicants for positions in the labor class either continuously or at such times as there are vacancies to be filled, provided, however, that no registration may be accepted until public notice of the intention to so accept registrations shall be made by the Commission. *Priority of such registration shall determine an applicant's place on the eligible list, provided the applicant meets required standards as to age, citizenship, physical fitness and residence as established by the Commission.* Eligibility to be called for examination following registration shall expire one year following the date of registration.

"The Civil Service Commission shall be the sole authority under the Charter to determine the grade and classification of positions as to duties and responsibilities in all branches of the classified service.

"(Effective November 6, 1951.)" (Emphasis added.)

[7]This decision in no way affects Council's power to present such a requirement to the voters as a proposed charter amendment pursuant to Section 200 of the City Charter.