OPINION
The instant case entails both an appeal and a cross-appeal from various judgment entries and orders by the Portage County Court of Common Pleas. Plaintiff-appellant/cross-appellee, Daniel J. Gargas ("appellant"), appeals from the following judgment entries and orders: the January 31, 2000 grant of summary judgment in favor of defendants-appellees/cross-appellants, the City of Streetsboro and Mayor Sally Henzel ("appellees" in some instances) as to his public policy and due process claims; the April 27, 2000 grant of appellees' protective order; the May 2, 2000 denial of his claim for attorney fees and motion for reconsideration, rendering the motion to strike the opinion letter moot; the June 14, 2000 denial of his motion for interim attorney fees and the grant of appellees' motion to strike the opinion letter; and the July 31, 2000 award of damages to him. Appellees cross-appeal the determination that they violated the charter, resulting in the January 31, 2000 denial of summary judgment as to appellant's charter violation claim. For the following reasons, we affirm in part and reverse in part the lower court.
As building director for the city of Streetsboro, appellant was appointed by Mayor Henzel and confirmed by city council. Appellant's duties included issuing all building and zoning permits, supervising the administration and enforcement of zoning and building ordinances, and performing any other duties as city council requested. On February 22, 1999, after approximately eight months of employment, Mayor Henzel issued appellant a letter of termination, effective immediately. This letter did not state a specific reason for appellant's discharge. On March 22, 1999, as required by Section 22.05 of the Streetsboro Charter, city council voted on appellant's termination. City council requested a reason for the termination; however, Mayor Henzel stated that she had cause, but declined to disclose specific reasons to prevent any additional grief. City council unanimously voted not to terminate appellant. The following day, March 23, 1999, Mayor Henzel issued appellant another termination letter. The letter stated they were incompatible and that she received complaints from construction trades, the public, and other city employees. The letter further stated appellant's code revisions contained multiple errors and he unjustifiably increased fees and created budget disputes. City council did not vote on appellant's second termination.
On June 8, 1999, appellant filed an amended complaint alleging wrongful termination, naming the city of Streetsboro and Mayor Henzel, individually and in her official capacity, as defendants. Appellant alleged violation of the Streetsboro Charter, breach of contract, promissory estoppel, abuse of power, violation of public policy, defamation, denial of due process, and other wrongdoings related to his unlawful dismissal. Appellant sought a declaratory judgment, injunctive relief, reinstatement to his position, compensatory and punitive damages, and attorney fees and costs.
Shortly thereafter, on June 14, 1999, appellees filed a motion to dismiss, or, if the court deemed it necessary or appropriate, a motion for summary judgment. The trial court converted appellees' motion to a motion for summary judgment. Appellees attached various documents, including case law, the affidavit of Mayor Henzel, and relevant sections of the Streetsboro Charter.[1] In response, appellant filed a memorandum in opposition attaching, among other things, selected pages from the depositions of Mayor Henzel and other city employees, the city charter, case law, his affidavit, and the two termination letters.[2]
A "non-oral" hearing was held on October 15, 1999. In a judgment entry filed January 31, 2000, the trial court granted appellees' motion for summary judgment on appellant's claims for breach of contract, promissory estoppel, violation of public policy, defamation, denial of due process, and punitive damages. However, as to appellant's charter violation claim, the trial court denied summary judgment, stating the Streetsboro Charter required city council's approval when a mayor discharges a building director, regardless of the fact that it is "for cause" or "without cause." The trial court "stayed" the judgment for sixty (60) days to allow city council to vote upon appellant's second termination by Mayor Henzel.
On March 17, 2000, appellant filed a motion to reconsider the January 31, 2000 judgment entry, arguing his public policy and denial of due process claims should not have been dismissed. Appellant attached an "opinion letter" by Daniel F. Marinucci, a licensed engineer, licensed building official, and practicing attorney.
Thereafter, on March 27, 2000, pursuant to the trial court's order in the January 31, 2000 judgment entry, city council voted on appellant's second termination. Council unanimously voted to terminate appellant "without cause" in accordance with Section 22.05 of the Charter. Soon after the vote, appellant filed a notice to take the deposition of four city council members.
Subsequently, on April 11, 2000, appellees filed a brief in opposition to appellant's motion for reconsideration, a motion for a protective order to prevent the deposition of the four city council members, and a motion to strike the opinion letter of Mr. Marinucci. On April 27, 2000, the trial court granted appellees' protective order.
Afterwards, on May 1, 2000, appellant filed an interim motion for attorney fees and costs. That same day, a hearing was conducted. In a judgment entry filed May 2, 2000, the trial court denied appellant's motion for attorney fees and costs. The trial court also overruled appellant's motion for reconsideration and determined that the motion to strike was moot. Appellees were also granted leave to supplement their motion for summary judgment as to damages based upon the trial court's determination that appellees violated the charter. Accordingly, appellant filed a brief in opposition to appellees' supplemental motion for summary judgment regarding damages.
Addressing the remaining motions, the trial court filed four separate judgment entries on June 14, 2000. First, the trial court denied appellant's motion for interim attorney fees and costs. Second, the court denied appellees' motion for summary judgment on the issue of damages owed to appellant, stating there existed genuine issues of material facts. Third, the court denied appellant's motion for reconsideration of the grant of summary judgment to appellees.[3] Fourth, the trial court granted appellees' motion to strike Mr. Marinucci's opinion letter, finding the letter lacked a sufficient factual basis, was outside the scope of his expertise, and was irrelevant to the legal issues presented.[4]
On July 21, 2000, a damages hearing was held. In a judgment entry filed July 31, 2000, the trial court concluded, as a result of appellees' charter violation, appellant established by a preponderance of evidence that he was entitled to $11,207 in back pay, $1,625.02 in retirement benefits, and $1,009.20 in medical benefits, totaling $13,841.22 plus the cost of the action.
On August 25, 2000, appellant filed a timely notice of appeal from the following judgment entries and orders: the January 31, 2000 judgment entry, granting summary judgment in favor of appellees on his due process and public policy claims; the April 27, 2000 order, granting appellees' protective order; the May 2, 2000 order, overruling appellant's motion for attorney fees and motion for reconsideration and determining the motion to strike was moot; the two June 14, 2000 judgment entries, denying appellant's motion for interim attorney fees and granting appellees' motion to strike the opinion letter; and the July 31, 2000 judgment entry, limiting appellant's damages to $13,841.22 plus costs. On September 1, 2000, appellees filed a timely cross-appeal from the January 31, 2000 judgment entry, determining that city council's approval was required for a "for cause" termination of a building director and resulting in the denial of summary judgment as to appellant's charter violation claim.
Due to the complexity of the instant appeal, we will address appellant's assignments of error and appellees' assignments of error on cross-appeal in a most efficient and logical manner. Each assignment or error and assignment of error on cross-appeal will be set out as it is addressed. Some of appellant's assignments of error directly relate to our determination of appellees' assignments of error; therefore, at a later point, it will be necessary to address appellant's remaining assignments of error after our review of appellees' assignments of error. We begin with appellant's first assignment of error:
 "[1] The lower court erred when it granted summary judgment to Defendants on the claims of violation of public policy and 42 U.S.C. § 1983, then overruled Plaintiff's Motion for Reconsideration. (T.d. 51, T.d. 76, T.d. 85.)"
 In appellant's first assignment of error, as to his public policy claim, appellant contends Mayor Henzel interfered with his official duties and terminated him in retaliation of his discovery of building code violations and enforcement of the building laws and codes. As to his due process claim, appellant contends Mayor Henzel intentionally misused her power and set policies that did not abide by the building laws and codes, violating 42 U.S.C. § 1983 and depriving him of his right to continued employment. Appellant adds that he was deprived of a protected property and liberty interest, which entitled him to a name clearing hearing. Finally, appellant asserts his second termination could be interpreted as an act of malice.
We begin with the standard of review for summary judgment. In reviewing a trial court's entry of summary judgment, a court of review must conduct a de novo review. Grafton v. Ohio Edison Co. (1996),77 Ohio St.3d 102, 105. Summary judgment is a procedural device designed to avoid a formal trial when there is nothing left to litigate. Norrisv. Ohio Std. Oil Co. (1982), 70 Ohio St.2d 1. Civ.R. 56(C) provides that summary judgment is proper when (1) there is no genuine issue as to any material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence, viewing the evidence most strongly in favor of the non-moving party, that reasonable minds can come to but one conclusion, which is adverse to the non-moving party. SeeState ex rel. Morley v. Lordi (1995), 72 Ohio St.3d 510, 512.
Once the moving party satisfies his initial burden of supporting his motion for summary judgment with sufficient and acceptable evidence pursuant to Civ.R. 56(C), Civ.R. 56(E) provides that the non-moving party may not rest upon the mere allegations or denials of the moving party's pleadings. Rather, the non-moving party has a reciprocal burden to respond by setting forth specific facts, explaining that a "genuine issue" exists to be litigated. State ex rel. Zimmerman v. Tompkins
(1996), 75 Ohio St.3d 447, 449. A "genuine issue" exists when a reasonable jury could return a verdict for the non-moving party based upon the evidence. Anderson v. Liberty Lobby, Inc. (1986), 477 U.S. 242,248.
In the case sub judice, before independently determining whether summary judgment was properly granted in favor of appellees as to appellant's due process and public policy claims, we must first address the underlying issue surrounding those claims. We will begin with appellant's due process claim under 42 U.S.C. § 1983.
42 U.S.C. § 1983 provides that any person who, under the color of any statute, ordinance, regulation, custom, or usage of any State, subjects another citizen of the United States to the deprivation of anyrights secured by the Constitution and laws, then that person shall be liable to the injured party for damages. "Persons" is intended to encompass both municipal corporations as well as natural "persons."Monell v. Dept. of Social Serv. (1978), 436 U.S. 658. TheFourteenth Amendment of the United States Constitution provides that no state shall deprive any person of life, liberty, or property without due process of law. See, also, Article 1, Section 16, Ohio Constitution. In order to state a federal claim under 42 U.S.C. § 1983, a plaintiff must demonstrate that his procedural due process rights were violated. A due process violation requires a showing that the conduct complained of deprived a plaintiff of a "liberty" and/or "property" interest/right without procedural safeguards. Merritt v. Canton Twp. Bd. of Trustees(1998), 125 Ohio App.3d 533, 537. Certain procedural safeguards must be implemented before one is deprived of a "liberty" and/or "property"right. Id.
When dealing with a "liberty" and/or "property" right in one's employment, the Supreme Court of Ohio has held that an individual must have more than an abstract need, desire, or unilateral expectation of continued employment; rather, an individual must have a legitimate claim of entitlement to continued employment. State ex rel. Trimble v. StateBd. of Cosmetology (1977), 50 Ohio St.2d 283, 285, (citing Bd. of Regentsv. Roth [1972], 408 U.S. 564, 577.) In the context of public employment, a plaintiff must show the defendant had a policy or custom that operated to deprive him/her of a constitutional right. Monell,436 U.S. at 689. Such entitlement to due process protection in continued employment requires the establishment of a "property right." Lee v.Cuyahoga Cty. Court of Common Pleas (1991), 76 Ohio App.3d 620, 622. Property rights are created and defined by existing rules or understandings that stem from independent sources such as state laws, which secure benefits and support claims of entitlement to those benefits. Roth, 408 U.S. at 577. Nonetheless, one is not barred from asserting a due process claim when no statute or contract affirmatively grants him job security because a property right in continued employment need not be based on tenure or on explicit contractual guarantees of continued employment. State ex rel. Trimble, supra,50 Ohio St.2d at 285. However, in the absence of statutory or contractual guarantees of continued employment, an individual must produce "rules or mutually explicit understandings" that support his claim of a property right in continued employment. Id. at 286. Once it is determined that a property right exists in continued civil service employment, such a right may not be taken without due process of law. Manning v. Clermont Cty. Bd. ofCommrs. (1989), 55 Ohio App.3d 177, paragraph one of the syllabus; see, also, Cleveland Bd. of Edn. v. Loudermill (1985), 470 U.S. 532.
In the case at bar, it is undisputed that appellant is a public employee of the City of Streetsboro. R.C. 124.11 divides civil service employees of state and local governments into either classified or unclassified employees. R.C. 124.11(A)(3) provides that unclassified public employees include all department heads appointed by the mayor. Unclassified employees are appointed at the discretion of the appointing authority, accrue no tenure, and serve at the pleasure of the appointing authority, meaning unclassified employees may be dismissed without cause, absent discrimination or malfeasance. State ex rel. Hunter v.Summit Cty. Human Resource Comm. (1998), 81 Ohio St.3d 450, 453. Moreover, Section 22.05 of the Streetsboro Charter provides "[t]hebuilding director shall continue in office at the pleasure of the Mayor
until he is removed from office without cause by the Mayor if a majority of Council approves such removal * * *." (Emphasis added.) This court and other Ohio courts have held that unclassified public employees donot have a property right in continued employment, nor are unclassified employees entitled to a due process hearing. Marks v. Howe (Aug. 2, 1991), Portage App. No. 90-P-2212, unreported, 1991 Ohio App. LEXIS 3672, at 3, (citing State ex rel. Trimble, supra). Further, public employees hold their office as a matter of law, not of contract; therefore, a vested interest or private right of property in their employment is non-existent. Lee, supra, 76 Ohio App.3d at 623, (citingFuldauer v. Cleveland [1972], 32 Ohio St.2d 114, paragraph three of the syllabus).Additionally, the Fourteenth Amendment to the United States Constitution mandates a "name clearing hearing" in certain circumstances. However, absent a property right in continued employment, a name clearing hearing is required only when an employer infringes upon an employee's "liberty right" by disseminating false and defamatory impressions about the employee in connection with his termination. Merritt, supra, 125 Ohio App.3d at 537, (citing State exrel. Kilburn v. Guard [1983], 5 Ohio St.3d 21, 23). Furthermore, absent a clear, immediate and substantial impact on an employee's reputation in the community, destroying his ability to engage in his occupation, a liberty right, needing the protection of a hearing, will not be found.State ex rel. Kilburn at 23, (citing State ex rel. Trimble, supra,50 Ohio St.2d at 287).
In the case before us, construing the evidence that was before the trial court in a light most favorable to appellant, clearly, appellant was an unclassified employee of the City of Streetsboro. As a result, appellant did not have a statutory or contractual claim of entitlement to continued employment with the City of Streetsboro. Additionally, the record does not contain any "rules or mutually explicit understandings" to demonstrate that appellant had a property right in continued employment. Appellant failed to satisfy his reciprocal burden of setting forth specific facts, demonstrating the existence of a "property right" in continued employment with the City of Streetsboro.
Next, as to appellant's argument concerning a name clearing hearing, construing the evidence most favorably to appellant, appellant was not entitled to a name clearing hearing. As stated above, absent a clear, immediate, and substantial impact on an employee's reputation in the community, destroying his ability to engage in his occupation, a liberty right, needing the protection of a hearing, will not be found. The record does not demonstrate that appellant's termination sufficiently damaged his reputation in the community or foreclosed on his future employment opportunities. On the contrary, on July 27, 1999, appellant obtained employment as the chief building official for the City of East Cleveland, four months after his second termination. Reasonable minds can come to but one conclusion, which is that appellant did not have a property or liberty right in continued employment with the City of Streetsboro. As a matter of law, the trial court correctly determined that the charter made it clear that appellant did not have a right to continued employment or a right to a hearing. Hence, the grant of summary judgment in favor of appellees as to appellant's42 U.S.C. § 1983 due process of law claim was proper since appellant was not deprived of a property or liberty right in continued employment.
We now address appellant's public policy argument, alleging his discharge was retaliatory in order to prevent him from enforcing the building laws and codes. It is well settled that under the at-will employment doctrine, absent facts and circumstances which indicate that the employment is for a specific duration or term, either side may terminate the employment relationship for any reason, not contrary to law. Burdine v. Avery Dennison Corp. (June 2, 2000), Lake App. No. 98-L-269, unreported, 2000 Ohio App. LEXIS 2350, at 25, (citing Mers v.Dispatch Printing Co. [1985], 19 Ohio St.3d 100, paragraph one of the syllabus). However, certain exceptions exist to the at-will employment doctrine. The Supreme Court of Ohio recognized a public policy exception, allowing an at-will employee to bring a cause of action in tort for wrongful discharge that violates a "clear public policy."Painter v. Graley (1994), 70 Ohio St.3d 377, paragraph two of the syllabus, (following Greeley v. Miami Valley Maintenance Contrs., Inc. [1990], 49 Ohio St.3d 228). A "clear public policy" is not limited to public policy expressed in statutory enactments; rather, it may also be based upon other sources such as the United States and Ohio Constitutions, administrative rules and regulations, and the common law.Painter at paragraph three of the syllabus.
The Supreme Court of Ohio again revisited the public policy exception in Kulch v. Structural Fibers, Inc. (1997), 78 Ohio St.3d 134. InKulch, the court reiterated the analysis for determining whether an at-will employee has a viable cause of action for tortious wrongful discharge in violation of public policy. First, the clarity element requires the existence of a clear public policy manifested in a state or federal constitution, statute, administrative regulation, or common law. Second, pursuant to the jeopardy element, discharge under such circumstances would jeopardize that public policy. Third, the causation element requires a showing that the discharge was motivated by conduct related to the public policy. Finally, under the overriding justification element, the employer lacked an overriding legitimate business justification for the dismissal. Kulch at 151, (citing Painter
at 384).
In the instant case, construing the evidence that was before the trial court most favorably to appellant, there is no evidence that appellant's employment was for a specified term or that there was a contractual agreement signifying a specific duration of his employment. The trial court properly determined that appellant was an at-will employee. Next, applying the above analysis to determine whether appellant, an at-will employee, has a viable cause of action for wrongful discharge in violation of public policy, under the clarity and jeopardy elements, there must exist a clear public policy by which discharge under such circumstances would jeopardize that public policy. Review of the record demonstrates that appellant set forth various statutes and code sections, identifying how building construction is to be inspected, defining who has the legal authority to conduct such inspections, and explaining how inspectors are certified in enforcing building laws. However, such does not satisfy appellant's reciprocal burden of producing specific facts demonstrating that a clear public policy exists and that discharge under such circumstances violates that public policy.
Even assuming that a clear public policy exists, the causation element requires a showing that appellant's discharge was motivated by conduct related to the public policy. Although the record contains various violations that appellant discovered during his inspections, there is absolutely no evidence to support appellant's contention that his termination was in retaliation for his discovery of building law and code violations or his enforcement of the building laws and codes. Review of the record in a light most favorable to appellant, indicates that appellant failed to meet his reciprocal burden of setting forth specific facts, demonstrating the existence of a genuine issue as to Mayor Henzel's "true" motivation for his termination. Mayor Henzel's "reasons" for appellant's discharge included appellant's disregard of her directives, appellant's hostility and aggressiveness in his code enforcement, appellant's errors, the complaints received about appellant, and the discovery of unreported funds being retained within his department. Portions of the record support Mayor Henzel's "reasons" for discharging appellant. First, the record contains a complaint letter to Mayor Henzel from a contractor. Second, in appellant's deposition, appellant acknowledged he did not follow the mayor's directives concerning the submission of his budget request. Third, appellant also stated in his deposition that there were unreported checks discovered in his department.[5] Appellant has failed to satisfy his reciprocal burden of presenting genuine issues that his termination was in retaliation for his discovery of building law and code violations or his enforcement of the building laws and codes. Summary judgment in favor of appellees was properly granted as to appellant's public policy claim.
Accordingly, without supporting documentation to satisfy appellant's reciprocal burden of setting forth specific facts demonstrating the existence of a genuine issue, reasonable minds can come to but one conclusion, which is adverse to appellant as to his public policy and due process claims. For the reasons stated, appellant's first assignment of error is without merit.
Appellant's remaining assignments of error rest upon our determination of appellees' cross-appeal; therefore, appellant's remaining assignments of error will be addressed after our review of appellees' cross-appeal. At this time, we will address appellees' assignments of error. Appellees set out six separate "assignments of error;" however, in actuality, appellees raise error only to the determination that appellees violated the charter, resulting in the denial of summary judgment as to appellant's charter violation claim. Appellees assert the following assignment of error:
 "[1] The lower court erred when it denied summary judgment to the City of Streetsboro and Mayor Henzel on Gargas's claim for termination in violation of the City Charter."
 In appellees' sole assignment of error, appellees contend city council is not required to approve the termination of a building director "for cause;" rather, city council is only required to approve a "without cause" termination of the building director.
The ultimate issue in appellees' assignment of error is whether city council is required to approve a "for cause" removal of the building director. A municipal charter is the constitution of a municipality.Cleveland ex rel. Neelon v. Locher (1971), 25 Ohio St.2d 49, 51. Through constitutional provisions and statutory enactments, a municipality has "the greatest possible quantum of power of self-government." Id. In particular, the Streetsboro Charter provides, in part:
"* * *
 "[Section 3.04(F)] The Mayor shall: * * * except as otherwise provided in this Charter, appoint and remove all directors of departments * * *.
"* * *
 "[Section 22.02] The Director of Building shall be the head of the Department of Building and shall be appointed by the Mayor with confirmation by a majority of Council.
"* * *
 "[Section 22.05] The building director shall continue in office at the pleasure of the Mayor until he is removed from office without cause by the Mayor if a majority of Council approves such removal at a regularly scheduled meeting of Council. Alternatively, he may be removed from office without cause by Council by a three-fourths (3/4) affirmative vote of the members of Council at a regularly scheduled meeting of that body." * * * (Emphasis added.)
 When the language of a municipal charter is plain, clear, and unambiguous, such language must be given its usual and ordinary meaning. State ex rel. Savarese v. Buckeye Local School Dist. Bd. of Edn. (1996), 74 Ohio St.3d 543, 545. In matters of construction, courts have an obligation to give effect to the words used, not to delete words used or to insert words not used. State ex rel. Cater v. N. Olmsted (1994), 69 Ohio St.3d 315, 324; Cleveland Elec. Illum. Co. v. Cleveland (1988), 37 Ohio St.3d 50, paragraph three of the syllabus. In other words, where the intent of a city charter provision is clear, it may not be enlarged, restricted, or abridged.
In the case before us, Section 3.04(F) grants the mayor general authority to appoint and remove the directors of departments, i.e. the building director, subject to other provisions in the charter which limit that power. Those provisions, relevant to the instant case, are Sections 21.02 and 22.05. Specifically, Section 22.05 limits the mayor's power to remove the building director when the basis for such removal is "without cause." Under such circumstances, and only under those circumstances, is city council's approval required. Review of other sections of the Streetsboro Charter demonstrate instances where the mayor's removal of a department director always requires approval by city council, regardless of the fact that the basis for removal is "with cause" or "without cause." For instance:
 "[Section 6.09] The Director of Finance can be removed by the Mayor if a majority of the members of Council approve such removal by vote at a regularly scheduled meeting of Council. He may be removed from office by Council by a three-fourths (3/4) affirmative vote of the members of Council.
 "[Section 9.04] The Law Director * * * may be removed by the Mayor if a majority of Council approves
 such removal by vote at a regularly scheduled meeting of Council. He may be removed from office by Council by a three-fourths (3/4) affirmative vote of the members of Council." (Emphasis added.)
 On the other hand, the following charter section, addressing the removal of the public service director, mirrors the language of Section 22.05:
 "[Section 7.07] The Director of Public Service shall continue in office at the pleasure of the Mayor and until he is removed from office without cause by Council by a three-fourths (3/4) affirmative vote of the members of Council * * *." (Emphasis added.)
 Clearly, if the intent of the drafters of the Streetsboro Charter was to require city council's approval for "cause" and "without cause" removal of the building director, the drafters could have easily done so, as is evidenced in other sections of the charter, which omit the words "without cause." It is apparent that the court below did not abide by its obligation to give effect to the words used and to not delete or insert words not used. The trial court enlarged the intent of the Streetsboro Charter by concluding the mayor's discharge of a building director "for cause" or "without cause" required approval by city council. The language of Section 22.05 unmistakably states that city council's approval is required only when the mayor discharges the building director "without cause." The trial court erred in concluding that appellees violated the charter when city council did not vote upon appellant's second termination. Hence, the trial court erred in denying summary judgment in favor of appellees as to appellant's charter violation claim. Moreover, nothing supports appellant's contention that the charter does not grant the mayor authority to terminate the building director "for cause," but only gives the mayor the power to discharge the building director "without cause," upon approval by city council. This argument defies logic. For the reasons stated, appellees' sole assignment of error is well taken.
Next, we address appellant's remaining assignments of error. We begin with appellant's second assignment of error:
 "[2] The lower court erred when it denied legal and equitable remedies to Mr. Gargas and when it denied Mr. Gargas reasonable attorney's fees and costs. (T.d. 76, T.d. 82, T.d. 87.)"
 Appellant's second assignment of error concerns the amount of damages that was awarded to him as a result of the trial court's determination that appellees violated the charter. In particular, appellant opines the trial court abused its discretion in finding that he did not prove his damages for pain and suffering and other related damages because, but for the wrongful termination, he would not have incurred certain foreseeable expenses. Appellant also argues the trial court erred in not awarding him attorney fees as a direct result of his unlawful termination and the finding that appellees violated the charter.
Appellant's arguments are based upon the trial court's determination that appellees violated the Streetsboro Charter. The purpose of damages is to make the aggrieved party whole again by compensating that party for losses incurred as a result of the other party's violation. Lake RidgeAcademy v. Carney (1993), 66 Ohio St.3d 376, 381. However, we concluded in appellees' assignment of error that appellees did not violate the Streetsboro Charter when city council did not vote upon appellant's second termination. Thus, the award of damages to appellant was premised upon the wrongful conclusion that appellees violated the charter. Moreover, under the "American rule," each party incurs the cost of their own attorney fees. See Homes by Calkins, Inc. v. Fisher (1993),92 Ohio App.3d 262, 273. Only a finding of bad faith may result in an award of attorney fees as compensatory damages in an action where punitive damages are proper. Vinci v. Ceraolo (1992), 79 Ohio App.3d 640,649. Clearly, appellant was not entitled to attorney fees since appellees' did not violate the charter. Accordingly, appellant's second assignment of error is without merit.
Next, we address appellant's third and fourth assignments of error collectively:
 "[3] The lower court abused its discretion when it granted a protective order preventing Mr. Gargas from deposing City Council members. (T.d. 74.)
 "[4] The lower court abused its discretion by striking the expert opinion of Daniel Marinucci. (T.d. 84.)"
 In appellant's third assignment of error, appellant avers the trial court abused its discretion when the court issued a protective order, denying him the right to discovery by not allowing the deposition of four city council members after they voted on appellant's second termination. Appellant contends that, pursuant to Civ.R. 26(C), there is no evidence that those council members were concerned about annoyance, embarrassment, or undue burden.
In appellant's fourth assignment of error, appellant argues the trial court abused its discretion in striking the opinion letter of Daniel Marinucci which was attached to his motion for reconsideration of the grant of summary judgment to appellees. Appellant contends Mr. Marinucci was highly qualified in the construction industry and in building laws and codes, was qualified as an expert under Evid.R. 702, and his opinions were grounded in relevant evidence. Appellant opines the attached resume and affidavit of Mr. Marinucci authenticated the opinion letter.
In light of our conclusion of appellant's first assignment of error and appellees' assignment of error on cross-appeal, our resolution of appellant's third and fourth assignments of error render any analysis of those assignments of error moot pursuant to App.R. 12(A)(1)(c). In appellant's first assignment of error, we concluded the trial court properly granted summary judgment as to appellant's due process and public policy claims. In appellees' assignment of error, we concluded the trial court erred in denying summary judgment as to appellant's charter violation claim because appellees did not violate the Streetsboro Charter. As a result, all subsequent actions by the parties and the trial court pertaining to the conclusion that appellees violated the charter were moot. As such, the trial court erred in requiring city council to vote upon appellant's second termination. Thus, the grant of appellees' protective order is moot. As to our conclusion that the trial court properly granted summary judgment as to appellant's due process and public policy claims, but erred in denying appellant's charter claim violation, appellant's subsequent motion for reconsideration, which included the opinion letter, is also moot. After a trial court has entered a final judgment, a motion for reconsideration is a nullity.Lorain Edn. Assn. v. Lorain Bd. of Edn. (1989), 46 Ohio St.3d 12.
For the foregoing reasons, appellees' assignment of error on cross-appeal is well taken.
Appellant's first and second assignments of error lack merit and appellant's remaining assignments of error are rendered moot. The judgment of the trial court is reversed as to the determination that appellees violated the city charter. The trial court erred in requiring city council to vote upon appellant's second termination. As a result, appellees should have been granted summary judgment as to appellant's charter violation claim. Consequently, the award of damages to appellant is not proper. In all other respects, the trial court properly granted summary judgment to appellees as to appellant's due process and public policy claims.
 _________________________ JUDGE DIANE V. GRENDELL
O'NEILL, P.J., concurs, NADER, J., dissents.
[1] Mayor Henzel's affidavit stated she had no personal animosity or malice towards appellant, but there was no good working relationship. She indicated appellant ignored her directives, was hostile and aggressive in his code enforcement, committed errors, and worked around her by directly approaching city council on administrative and financial matters. Mayor Henzel added that she received complaints and discovered unreported funds being retained within his department.
[2] Appellant's affidavit listed examples of the violations that he discovered during his inspections of various construction sites. Appellant also stated he was never informed that his job performance was deficient.
[3] The trial court previously overruled appellant's motion for reconsideration in its May 2, 2000 judgment entry. However, appellees were subsequently granted leave to supplement their motion for summary judgment as to damages and appellant submitted a brief in opposition.
[4] The trial court previously determined in its May 2, 2000 judgment entry that the motion to strike was moot because of the trial court's decision to overrule appellant's motion for reconsideration. However, as explained in fn. 3, appellees supplemented their motion for summary judgment as to damages and appellant filed a brief in opposition.
[5] As an aside, although the trial court's conclusion, granting summary judgment in favor of appellees as to appellant's public policy claim was proper, the trial court's analysis in reaching that conclusion could have been more explanatory. The trial court stated appellant failed to demonstrate that his termination contravened a clear public policy because Section 22.05 of the Streetsboro Charter expressly allowed him to hold his position at the pleasure of the mayor until he was removed upon city council's approval. However, Section 22.05 only
supports the contention that appellant was an at-will employee.